UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STEELE INSURANCE AGENCY, INC., et al.,<br><br>Defendants. | No. 2:13-cv-00784-MCE-DAD<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiffs Farmers Insurance Exchange ("Farmers"), Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company ("Plaintiffs") seek relief from Defendants Steele Insurance Agency, Inc. ("Steele Insurance Agency"), Troy Steele ("Steele"), Ted Blalock ("Blalock"), Larry McCarren ("McCarren"), Bill Henton ("Henton"), Cindy Jo Perkins ("Perkins"), and Does 1 through 50 (collectively "Defendants") for the alleged misappropriation of Plaintiffs' trade secrets, as well as other violations of state and federal law pertaining to the operation of Plaintiffs' and Defendants' respective insurance companies.  Presently before the Court is Plaintiffs' Application for a Temporary Restraining Order ("TRO") filed on April 26, 2013.  Defendants filed an opposition to the TRO on April 29, 2013.  (ECF No. 7.)  Plaintiffs filed a reply.  (ECF No. 8.)

1

The Court held oral argument on the matter on April 30, 2013.  The Court ruled on the motion from the bench and DENIED the Application for TRO.  The Court set a hearing on Plaintiffs' Application for a Preliminary Injunction for May 10, 2013, at 10:00 AM.

The following is the Court's memorandum and order on Plaintiffs' Application for TRO, which more fully explains the Court's reasoning in denying the motion.  To the extent that there is any inconsistency between this Order and the Court's ruling from the bench, the terms of this Order control.

## STANDARD

The purpose of a temporary restraining order is to preserve the relative positions of the parties—the status quo—until a trial on the merits can be conducted.  Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974) (temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"); LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir. 2006) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  Issuance of a temporary restraining order as a form of preliminary injunctive relief "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Defense Council, 555 U.S. 7, 22 (2008).  Plaintiffs have the burden of proving the propriety of such a remedy by clear and convincing evidence.  See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Granny Goose, 415 U.S. at 441.  The propriety of a TRO hinges on a significant threat of irreparable injury that must be imminent in nature.  Caribbean Marine Servs. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

///
///
///

1  In general, the showing required for a temporary restraining order is the same as that required for a preliminary injunction. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking a temporary restraining order must establish that he is (1) "likely to succeed on the merits;" (2) "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "a preliminary injunction is in the public interest." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008)); see also Am. Trucking Ass'ns, Inc. v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009) (adopting the preliminary injunction standard articulated in Winter)). "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24 (quoting Amoco Prod. Co., 480 U.S. 531, 542 (1987).

Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

///
///
///
///
///
///

3

# FACTUAL BACKGROUND[1]

Plaintiffs allege that each Farmers agent, as part of their contract with Farmers, expressly agrees that Farmers' policyholder information, whether maintained on Farmers' databases or in hard copy or electronic files in an agent's office, is the confidential property of Farmers. This information is to be returned to Farmers upon termination of the contract, and is not to be used to Farmers' detriment. This information is not shared with Farmers' competitors.

Farmers maintains databases, which include the Electronic Customer Marketing System ("eCMS"). eCMS contains information about current and former policyholders, including name, address, telephone, social security number, driver's license number, policy expiration date, insured property, claims history, financial, and other information of Farmers' policyholders.[2] Farmers invests significant time, labor, and capital in developing this information. The Confidential Policyholder Information is not generally available in this aggregated form in the industry or to Farmers' competitors. If this information was available to Plaintiffs' competitors, those competitors could more easily solicit Farmers' policyholders to change insurance providers.

eCMS is an important tool on the Farmers' "Agency Dashboard," which is accessed and used by Farmers' authorized insurance agents. eCMS provides authorized agents with the ability to access Confidential Policyholder Information about the policyholders they service, and allows agents to create policyholder reports, contact lists, mailing labels, etc.

///

///

---

[1] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Memorandum of Points and Authorities in Support of Motion for TRO. (ECF No. 5-1.) While Defendants objected to many of the statements contained in the evidence submitted by Plaintiffs, the Court did not consider those statements in ruling on Plaintiffs' Application. (See ECF No. 7-1 (objecting to Plaintiffs' Declarations).) Accordingly, the Court finds it unnecessary to rule on the Defendants' objections at this time.

[2] This information is referred to by Plaintiffs as "Confidential Policyholder Information."

Use of eCMS is subject to certain confidentiality restrictions and security protections. Farmers maintains its Confidential Policyholder Information, including policy expirations, on a password and user-ID protected system. In addition, when an individual Farmers agent accesses eCMS, Farmers provides an eCMS "view" that is unique to that particular Farmers insurance agent. The eCMS "view" enables agents (and their authorized staffs) to access customer information for only those Farmers' customers serviced by each individual agent on behalf of Farmers. When an agent's Agent Agreement is terminated, the agent's access (and their staffs' access) to eCMS and the Agency Dashboard is turned off and their user ID/password combination is no longer valid. Farmers also issues company policies regarding access to and preservation of Confidential Policyholder Information, by maintaining copies of those policies on the Agency Dashboard. Farmers periodically reminds its insurance agents of Farmers' confidentiality policies via bulletins, yearly compliance memoranda, and other communications." (ECF No. 5-3 at 4.) Finally, each time an agent accesses Farmers' proprietary system through the Agency Dashboard, that agent must acknowledge that they have read and understood an additional separate "Notice" and agree to be bound by its terms. The Notice provides that the information the agent is accessing is "proprietary, confidential and trade secret information of Farmers," and that use of the information is "intended for use in connection with legitimate business purposes related to the agent's Farmers agency and Farmers, and is not intended to be used for other purposes."

<u>Defendants Troy Steele and Steele Insurance Agency</u>

Steele was appointed a District Manager with Farmers in 2001, pursuant to a District Manager Appointment Agreement. Pursuant to the terms of this Agreement, Farmers terminated Steele's Agreement in January 2010. Thereafter, Steele began his own independent insurance agent—the Steele Insurance Agency. Steele and the Steele Insurance Agency were not appointed or allowed to sell Farmers' insurance products.

///

Plaintiffs allege that Steele is involved in a "plot to systematically violate the trade secret protection of Farmers' Confidential Policyholder Information." (ECF No. 5-1 at 10.)  In short, Plaintiffs contend that Steele is assisting current and former Farmers agents, or their staff members, to use Plaintiffs' customer lists and other trade secret information to solicit those customers to switch to the Steele Insurance Agency. According to Plaintiffs, Farmers had lost numerous customers to the Steele Insurance Agency as a result of Steele's trade secret misappropriation.

<u>Defendant Larry McCarren</u>

McCarren was a Farmers agent who worked in the district of Defendant District Manager Blalock until January 2012.  McCarren and Blalock had a close relationship. Defendant Blalock's District Manager Appointment Agreement was terminated in January 2012.  Blalock then went to work for the Steele Insurance Agency.

By the summer of 2012, McCarren's new business was down seventy percent from the year before.  In August 2012, McCarren exercised his option under his Agent Appointment Agreement to terminate his Agreement with Farmers after giving three months' written notice.  Thus, McCarren's termination became effective November 3, 2012.  McCarren is now appointed with and working as an insurance agent for Steele Insurance Agency.

Following McCarren's resignation, Farmers received complaints from customers saying that McCarren had contacted them in an attempt to switch their insurance business to other carriers.  According to Plaintiffs, Farmers' internal records also show that shortly before and during the three-month window between McCarren's resignation, in August 2012, and his effective termination date in November 2012, McCarren used Farmers' computer system to download a significant amount of information regarding Farmers' customers that he serviced as a Farmers agent.  Records show that McCarren accessed information pertaining to roughly 800 Farmers' customers.  From the records, is appears that McCarren devoted the entirety of four consecutive days in August to downloading this information.

Before McCarren left in November, he accessed policyholder information on "all or virtually all" of the customers he serviced as a Farmers agent.

Butler confronted McCarren with these facts.  McCarren admitted that he possessed documents relating to Farmers.  McCarren stated that he had downloaded the Farmers customer information to use in the event that Farmers did not pay him the Contract Value as specified in his Agent Appointment Agreement.  Butler then went to McCarren's office to collect documents, and McCarren's office manager turned over thousands of pages with policy files relating to Farmers' customers.  According to Plaintiffs, the office manager inadvertently turned over "training materials provided by Troy Steele to McCarren, apparently showing McCarren the paperwork and strategies to employ in switching customers form Farmers to Steele's agency." (ECF No. 5-1 at 11.) Farmers lost the insurance business of at least twenty-nine customers previously serviced by McCarren while he was a Farmers agent.  According to Plaintiffs, these customers have switched to the Steele Insurance Agency.

<u>Defendant Cindy Jo Perkins</u>

In the spring of 2012, Perkins went to work for another Farmers agent, Charlie Finister.  Perkins was McCarren's longtime employee.  Throughout the year of 2012, Finister was gravely ill with diabetes.

Finister resigned and went into hospice in early November 2012.  Thereafter, Butler went to Finister's office and found that Perkins was running the office.  Butler asked Perkins whether she had a license to transact insurance.  Perkins replied that she did.  Butler then asked Perkins to verify that Perkins had appointments, and informed Perkins that Perkins needed to have a contract with Farmers to sell Farmers' products. Perkins then printed her appointment information from the Department of Insurance website, which showed that Perkins was appointed with Steele Insurance Agency. Perkins remains appointed with Steele Insurance Agency.

///

///

Perkins then admitted that she had used Finister's user ID and password combination to gain access to the Farmers' computer system when she worked in the office. Farmers disconnected Finister's user ID and password combination on or around November 2, 2012. Finister's computer records show that in the months of October and November 2012, Finister's user ID and password were used to access hundreds of documents containing Farmers' policyholder information. From October 23 to October 31, Finister's user ID was used to download over 300 reports or other documents containing information about Farmers' customers serviced by Finister. On November 1 and 2, Farmers' policyholder information was downloaded over 100 times.

Since that time, Farmers has lost the insurance business of at least thirty-seven customers previously serviced by Finister when he was a Farmers agent. According to Plaintiffs, these customers have switched to Steele Insurance Agency.

<u>Defendant Bill Henton</u>

Bill Henton ("Mr. Henton"), Defendant Henton's father, was a Farmers agent from 1968 to 2012. In 2012, Mr. Henton's District Manager, Rudy Cedre, believed that Mr. Henton had developed severe memory problems. Defendant Henton worked in Mr. Henton's office, but Defendant Henton was not appointed as an agent with Farmers.

In November 2012, Mr. Henton resigned as a Farmers agent. Individuals within Mr. Henton's office have since informed Cedre that Defendant Henton allowed his wife and daughter to access the Farmers' computer system, prior to Mr. Henton's resignation from Farmers. According to Cedre, Defendant Henton is also in the process of becoming, or has become, a part of Steele Insurance Agency. Defendant Henton remains in control of the employees and contents of his father Mr. Henton's office, including the physical files relating to over 1500 Farmers' policies. These files have not been returned to Cedre, and Cedre has not been able to access these files. Defendant Henton also arranged for his father's mail, including Farmers' business mail, to be forwarded to Defendant Henton's new business address.

///

Plaintiffs contend that since Mr. Henton's Farmers agency terminated, or shortly beforehand, Farmers lost the insurance business of "a significant number of Farmers' customers previously serviced by [Mr. Henton] when he was a Farmers agent." (ECF No. 5-1 at 14.)  At least 124 policies formerly serviced by Mr. Henton have switched to Steele Insurance Agency.

Thus, the gravamen of Plaintiffs' allegations is that Steele and the other Defendants obtained Plaintiffs' trade secret information and used that information to switch Farmers' customers to Steele Insurance Agency.

## LEGAL BACKGROUND and RELIEF SOUGHT

Plaintiffs originally filed their action in the Superior Court of California, County of San Joaquin, on April 5, 2013.  Plaintiffs allege nine causes of action: (1) breach of contract; (2) misappropriation of trade secrets; (3) intentional interference with contractual relations; (4) intentional interference with prospective economic advantage; (5) unfair competition; (6) breach of fiduciary duty; (7) violation of the computer fraud act, 18 U.S.C. § 1030(a)(2)(C); (8) violation of the computer fraud act, 18 U.S.C. § 1030(a)(4); and (9) civil conspiracy.  (ECF No. 1 at 7.)

On April 22, 2013, Plaintiffs filed a TRO in state court.  (Newman Decl., ECF No. 5-2 at 2.)  On April 23, 2013, Defendants removed this action to federal court.  (ECF No. 1.)  On April 25, 2013, Plaintiffs filed the instant Application for TRO.  (ECF No. 5.)

///
///
///
///
///
///
///

Plaintiffs' Application requests that the Court order that Defendants: (1) "[I]mmediately cease and desist accessing, utilizing, divulging, or making use in any manner, confidential trade secret information relating to the identity of, or any information regarding, Farmers policyholders"; (2) "[I]mmediately cease and desist duplicating, copying, condensing, or summarizing trade secret policyholder information obtained from Farmers' computer database or from hard copy or electronic files of former Farmers agents"; (3) "[I]mmediately cease and desist duplicating, copying, condensing, or summarizing information obtained from Farmers' computer databases or the files of former Farmers agents that pertains to policyholder expirations or other policyholder information"; and (4) "[I]mmediately cease and desist disseminating, transferring, publishing, or communicating to any other person, including competing insurance carriers, Farmers' trade secret policyholder information." (ECF No. 5-1 at 7.)

Plaintiffs also ask the Court that Defendant McCarren be ordered to immediately cease and desist from, for a period of one year, directly or indirectly soliciting, accepting, or servicing the insurance business of any policyholder previously serviced by McCarren when he was an agent of Farmers. (Id.) Additionally, Plaintiffs ask that "all non-Defendants appointed by the Steele Insurance Agency who were agents or District Managers of Farmers within the last year to immediately cease and desist from, for a period of one year, directly or indirectly soliciting, accepting, or servicing the insurance business of any policyholder previously serviced by that person when they were agents and/or District Managers of Farmers." (Id.) Finally, Plaintiffs ask that the Court compel "Defendants . . . to allow Farmers reasonable access to each and every computer and other device, including all off-site internet data storage . . . capable of storing electronic information in their possession, custody, and control wherever located, to determine if it contains any trade secret policyholder information, and if so, to be permanently deleted from the memory of these computers and devices." (Id.)

///

///

# ANALYSIS

### A.     Procedural Issues

Defendants argue that Plaintiffs fail to adequately explain Plaintiffs' delay in filing this action and seeking a TRO and a preliminary injunction. (ECF No. 7 at 7 n.1.) Defendants correctly assert that "Plaintiffs bear the burden of showing that, among other things, they are likely to suffer irreparable injury and the injury must be imminent in nature." Caribbean Marine, 844 F.2d at 674.  Local Rule 231(b), which governs the timing of motions for TROs, states in full:

> In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order. Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground.

As stated above, Plaintiffs filed their Complaint in state court on April 5, 2013. (ECF No. 1 at 2, 26.)  On April 19, 2013, Plaintiffs served letters on all Defendants in the case, informing them that Plaintiffs would seek ex parte relief in state court on April 23, 2013.  (ECF No. 5-2 at 2.)  Plaintiffs filed all papers relating to the TRO application with the Superior Court, County of San Joaquin, on April 22, 2013.  (Id.)  Plaintiffs requested relief identical to the relief sought here.  (Id.)  On the afternoon of April 22, 2013, Plaintiffs received notice that Defendants had removed the matter to federal court.  (Id.; see also ECF No. 1 (removing action to federal court).)  Between April 22 and April 24, 2013, Plaintiffs worked to rewrite their Motion for TRO "to make it appropriate for a federal filing." (ECF No. 5-2 at 2.)

///

///

///

///

However, while Plaintiffs address the use of their time between their initial filing of a TRO in state court and their filing of their Application for TRO in the present case, neither Plaintiffs' Application nor Plaintiffs' Reply addresses the cause of their delay in filing a case or seeking a TRO or preliminary injunction between November 2012 and April 2013. Indeed, Plaintiffs' TRO Checklist states that there has not been undue delay in bringing a TRO, and that the TRO could not have been brought earlier. (ECF No. 5-21 at 1.)

However, from Plaintiffs' allegations, Plaintiffs first learned of Defendants' alleged trade secret misappropriation on or around November 1, 2012. Indeed, Butler's Declaration states in the "summer of 2012," he suspected that McCarren was "writing new business, but in violation of his Agency Appointment Agreement . . . was writing it for other insurers." (ECF No. 5-14 at 3.) On November 1, 2012, Butler went to McCarren's office to collect documents. On this date, McCarren turned over the document which Plaintiffs contend constitute "training materials provided by Troy Steele to McCarren . . . showing McCarren the paperwork and strategies to employ in switching customers from Farmers to Steele's agency." (ECF No. 5-1 at 11.) As Defendants pointed out in the hearing, Plaintiffs printed the record of McCarren's downloading activity on December 5, 2012. Similarly, Plaintiffs allege that Perkins accessed Finister's computer system in October and November 2012. (Id. at 12.) Plaintiffs further allege that Farmers' customers previously serviced by Finister cancelled their policies between November 21, 2012 and January 15, 2013. (Id. at 13.) As to Defendant Henton, Plaintiffs allege that "since the termination of Bill Henton's Farmers agency, or shortly beforehand, Farmers has lost the insurance business of a significant number of Farmers' customers previously serviced by Bill Henton when he was a Farmers agent . . . ." (Id. at 14.) According to Plaintiffs, Mr. Henton (Defendant Henton's father) resigned as a Farmers agent in November 2012. (Id. at 13.) Thus, the alleged harm to Plaintiffs occurred, or began to occur, in November 2012, and Plaintiffs knew of this harm at that time.

12

In sum, Plaintiffs provide no explanation for their delay in seeking a TRO for nearly six months. There is nothing before the Court to suggest that Plaintiffs could not "have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." Local R. 231(b); see also Occupy Sacramento v. City of Sacramento, 2:11-CV-02873-MCE, 2011 WL 5374748 (E.D. Cal. Nov. 4, 2011) (denying application for TRO for twenty-five day delay). Plaintiffs could have sought a preliminary injunction, without resorting to the extraordinary form or relief that is a TRO, in the interim period between November 2012 and April 23, 2013. Plaintiffs' failure to seek relief for the almost six months between November 2012 and the date that Plaintiffs filed their Complaint in state court contradicts Plaintiffs' claims that Plaintiffs will suffer irreparable harm which is imminent in nature if the TRO does not issue. Under the circumstances here, the Court finds that a delay of nearly six months constitutes an "undue delay" under Local Rule 231(b).

Accordingly, the Court denies Plaintiffs' Motion on procedural grounds alone. It is therefore unnecessary to address the substantive issues of Plaintiffs' Application at this time.

## CONCLUSION

For the reasons just stated, IT IS HEREBY ORDERED that Plaintiffs' motion for a TRO is DENIED. (ECF No. 5.)

DATE: April 30, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT