UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FARMERS INSURANCE EXCHANGE, et al.,

    Plaintiffs,

  v.

STEELE INSURANCE AGENCY, INC., et al.,

    Defendants.

No. 2:13-cv-00784-MCE-DAD

**MEMORANDUM AND ORDER**

Through this action, Plaintiffs Farmers Insurance Exchange ("Farmers"), Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company (collectively "Farmers" or "Plaintiffs") seek relief from Defendants Steele Insurance Agency, Inc. ("Steele Insurance Agency"), Troy Steele ("Steele"), Ted Blalock ("Blalock"), Larry McCarren ("McCarren"), Bill Henton ("Henton"), Cindy Jo Perkins ("Perkins") and Does 1 through 50 (collectively "Defendants") for alleged misappropriation of Plaintiffs' trade secrets, as well as other violations of state and federal law pertaining to the operation of Plaintiffs' and Defendants' respective insurance companies.

Presently before the Court is Plaintiffs' motion for a preliminary injunction filed on April 26, 2013.

1

1   The Court held oral argument on the motion for a preliminary injunction on May 10,

2   2013, and took the matter under submission.  For the reasons set forth below, Plaintiffs'

3   motion for a preliminary injunction is hereby GRANTED.

4

5                                **FACTUAL BACKGROUND[1]**

6

7        Plaintiffs allege that each Farmers agent, as part of their contract with Farmers,

8   expressly agrees that Farmers policyholder information, whether maintained on Farmers'

9   databases or in hard copy or electronic files in an agent's office, is the confidential

10  property of Farmers.  This information is to be returned to Farmers upon termination of

11  the contract and is not to be used to Farmers' detriment.  This information is not shared

12  with Farmers' competitors.

13       Farmers maintains databases, which include the Electronic Customer Marketing

14  System ("eCMS").  eCMS contains information about current and former policyholders,

15  including name, address, telephone, social security number, driver's license number,

16  policy expiration date, insured property, claims history, financial and other information of

17  Farmers' policyholders.[2]  Farmers invests significant time, labor and capital in

18  developing this information.  The Confidential Policyholder Information is not generally

19  available in this aggregated form in the industry or to Farmers' competitors.  If this

20  information were available to Plaintiffs' competitors, those competitors could more easily

21  solicit Farmers' policyholders to change insurance providers.

22       eCMS is an important tool on the Farmers' "Agency Dashboard," accessed and

23  used by Farmers' authorized insurance agents.  eCMS enables authorized agents to

24  access Confidential Policyholder Information about the policyholders they service and

25  allows agents to create policyholder reports, contact lists, mailing labels, etc.

26  _____

27       [1] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Memorandum of
Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction.  (ECF No. 5-1.)

28       [2] Plaintiffs refer to this information as "Confidential Policyholder Information."

1     Use of eCMS is subject to certain confidentiality restrictions and security

2  protections.  Farmers maintains its Confidential Policyholder Information, including policy

3  expirations, on a password and user-ID protected system.  Additionally, when an

4  individual Farmers agent accesses eCMS, Farmers provides an eCMS "view" unique to

5  that particular Farmers agent.  The eCMS "view" enables agents (and their authorized

6  staffs) to access only information about their own customers.  When an agent's Agent

7  Agreement is terminated, Farmers turns off the agent's access, and their staffs' access,

8  to eCMS and the Agency Dashboard, and the terminated agent's user ID/password

9  combination is no longer valid.  Farmers also issues company policies regarding access

10  to and preservation of Confidential Policyholder Information, by maintaining copies of

11  those policies on the Agency Dashboard.  "Farmers periodically reminds its insurance

12  agents of Farmers' confidentiality policies through bulletins, yearly compliance

13  memoranda, and other communications."  (Decl. Rod Chamberlain,  ECF No. 5-3.)

14  Finally, each time an agent accesses Farmers' proprietary system through the Agency

15  Dashboard, that agent must acknowledge that they have read and understood an

16  additional separate "Notice" and agree to be bound by the terms of the Notice.  The

17  Notice provides that the information the agent is accessing is "proprietary, confidential

18  and trade secret information of Farmers," and that use of the information is "intended for

19  use in connection with legitimate business proposes related to the agent's Farmers

20  agency and Farmers, and is not intended to be used for other purposes . . . ."  (Id.)

21     Defendants Troy Steele and Steele Insurance Agency

22     Defendant Steele was appointed a District Manager with Farmers in 2001,

23  pursuant to a District Manager Appointment Agreement.  Pursuant to the terms of this

24  Agreement, Farmers terminated Defendant Steele's Agreement in January 2010.

25  Thereafter, Defendant Steele began his own independent insurance agency—the Steele

26  Insurance Agency.  Defendant Steele and the Steele Insurance Agency were not

27  appointed or allowed to sell Farmers' insurance products.

28  ///

1    Plaintiffs allege that Defendant Steele is involved in a "plot to systematically

2    violate the trade secret protection of Farmers' Confidential Policyholder Information."

3    (ECF No. 5-1 at 10.)  In short, Plaintiffs contend that Defendant Steele is assisting

4    current and former Farmers agents, or their staff members, to use Plaintiffs' customer

5    lists and other trade secret information to solicit those customers to switch to the Steele

6    Insurance Agency.  According to Plaintiffs, Farmers has lost numerous customers to the

7    Steele Insurance Agency as a result of Defendant Steele's trade secret

8    misappropriation.

9    <u>Defendant Larry McCarren</u>

10    Defendant McCarren was a Farmers agent who worked in the district of District

11    Manager Defendant Blalock until January 2012.  Defendant Blalock's District Manager

12    Appointment Agreement was terminated in January 2012.  Defendant Blalock then went

13    to work for the Steele Insurance Agency.  Defendant McCarren and Defendant Blalock

14    had a close relationship.

15    By the summer of 2012, Defendant McCarren's new business was down seventy

16    percent from the year before.  In August 2012, Defendant McCarren exercised his option

17    under his Agent Appointment Agreement to terminate his Agreement with Farmers after

18    giving three months' written notice.  Thus, Defendant McCarren's termination became

19    effective November 3, 2012.  Defendant McCarren is now appointed with and working as

20    an insurance agent for Steele Insurance Agency.

21    Following Defendant McCarren's resignation, Farmers received customer

22    complaints that Defendant McCarren had contacted them in an attempt to switch their

23    insurance business to other carriers.  According to Plaintiffs, Farmers' internal records

24    also show that shortly before and during the three-month window between Defendant

25    McCarren's resignation in August 2012 and his effective termination date in November

26    2012, Defendant McCarren used Farmers' computer system to download a significant

27    amount of information regarding Farmers customers that he serviced as a Farmers

28    agent.

4

1   Records show that Defendant McCarren accessed information pertaining to roughly 800

2   Farmers customers.  The records suggest that Defendant McCarren and/or his

3   employees devoted the entirety of four consecutive days in August to downloading this

4   information.  Before Defendant McCarren left Farmers in November, he accessed

5   policyholder information on "all or virtually all" of the customers he serviced as a Farmers

6   agent.

7        Mr. Butler confronted Defendant McCarren with these facts.  Defendant McCarren

8   admitted that he possessed documents relating to Farmers.  Defendant McCarren stated

9   that he had downloaded the Farmers customer information to use in the event that

10  Farmers did not pay him the Contract Value as specified in his Agent Appointment

11  Agreement.  Mr. Butler then went to Defendant McCarren's office to collect documents,

12  and Defendant McCarren's office manager turned over thousands of pages with policy

13  files relating to Farmers' customers.  According to Plaintiffs, the office manager

14  inadvertently turned over "training materials provided by Troy Steele to McCarren,

15  apparently showing McCarren the paperwork and strategies to employ in switching

16  customers form Farmers to Steele's agency."  (ECF No. 5-1 at 11.)  Farmers lost the

17  insurance business of at least twenty-nine customers previously serviced by Defendant

18  McCarren while he was a Farmers agent.  Plaintiffs state that these customers have

19  switched their business to the Steele Insurance Agency.

20        Defendant Cindy Jo Perkins

21        Defendant Perkins was Defendant McCarren's longtime employee.  In the spring

22  of 2012, Defendant Perkins went to work for another Farmers agent, Charlie Finister.

23  Throughout the year of 2012, Mr. Finister was gravely ill with diabetes.  Mr. Finister

24  resigned and went into hospice in early November 2012.  Thereafter, Mr. Butler went to

25  Mr. Finister's office and found that Defendant Perkins was running the office.  Mr. Butler

26  asked Defendant Perkins whether she had a license to transact insurance.  Defendant

27  Perkins replied that she did.

28  ///

1   Mr. Butler then asked Defendant Perkins to verify that she had appointments and

2   informed Defendant Perkins that she needed to have a contract with Farmers to sell

3   Farmers products.  Defendant Perkins then printed her appointment information from the

4   Department of Insurance website, which showed that Defendant Perkins was appointed

5   with Steele Insurance Agency.  Defendant Perkins remains appointed with Steele

6   Insurance Agency.

7          Defendant Perkins then admitted that she had used Mr. Finister's user ID and

8   password combination to gain access to the Farmers computer system while she worked

9   in Mr. Finister's office.  Farmers disconnected Mr. Finister's user ID and password

10  combination on or around November 2, 2012.  Mr. Finister's computer records show that

11  in the months of October and November 2012, Mr. Finister's user ID and password were

12  used to access hundreds of documents containing Farmers policyholder information.

13  From October 23 to October 31, Mr. Finister's user ID was used to download over 300

14  reports or other documents containing information about Farmers customers serviced by

15  Mr. Finister.  On November 1 and 2, Farmers policyholder information was downloaded

16  over 100 times.

17         Since that time, Farmers has lost the insurance business of at least thirty-seven

18  customers serviced by Mr. Finister when he was a Farmers agent.  According to

19  Plaintiffs, these customers have switched to Steele Insurance Agency.

20         Defendant Bill Henton

21         Bill Henton ("Mr. Henton"), Defendant Henton's father, was a Farmers agent from

22  1968 to 2012.  In 2012, Mr. Henton's District Manager, Rudy Cedre, believed that

23  Mr. Henton had developed severe memory problems.  Defendant Henton worked in

24  Mr. Henton's office, but Defendant Henton was not appointed as an agent with Farmers.

25  In November 2012, Mr. Henton resigned as a Farmers agent.  Individuals within

26  Mr. Henton's office have since informed Mr. Cedre that Defendant Henton allowed his

27  wife and daughter to access the Farmers computer system, prior to Mr. Henton's

28  resignation from Farmers.

According to Mr. Cedre, Defendant Henton is also in the process of becoming, or has become, a part of Steele Insurance Agency. Defendant Henton remains in control of the employees and contents of his father Mr. Henton's office, including the physical files relating to over 1,500 Farmers policies. These files have not been returned to Mr. Cedre, and Mr. Cedre has not been able to access these files. Defendant Henton also arranged for his father's mail, including Farmers' business mail, to be forwarded to Defendant Henton's new business address.

Plaintiffs contend that since Mr. Henton's Farmers agency terminated, or shortly beforehand, Farmers lost the insurance business of "a significant number of Farmers customers previously serviced by [Mr. Henton] when he was a Farmers agent." (ECF No. 5-1 at 14.) At least 124 policies formerly serviced by Mr. Henton have switched to Steele Insurance Agency.

Thus, the gravamen of Plaintiffs' complaint is that Defendants obtained Plaintiffs' trade secret information and used that information to switch Farmers customers to the Steele Insurance Agency.

**PROCEDURAL BACKGROUND**

Plaintiffs originally filed their action in the Superior Court of California, County of San Joaquin, on April 5, 2013. Plaintiffs allege nine causes of action: (1) breach of contract; (2) misappropriation of trade secrets; (3) intentional interference with contractual relations; (4) intentional interference with prospective economic advantage; (5) unfair competition; (6) breach of fiduciary duty; (7) violation of the computer fraud act, 18 U.S.C. § 1030(a)(2)(C); (8) violation of the computer fraud act, 18 U.S.C. § 1030(a)(4); and (9) civil conspiracy. (ECF No. 1 at 7.)

On April 22, 2013, Plaintiffs filed a TRO in state court. (Newman Decl. 2, ECF No. 5-2.) On April 23, 2013, Defendants removed this action to federal court. (ECF No. 1.)

1   On April 25, 2013, Plaintiffs filed the instant Application for TRO and Motion for

2   Preliminary Injunction.  (ECF No. 5.)  Defendants filed an opposition on April 29, 2013.

3   On April 30, 2013, the Court held oral argument and denied the Application for TRO.

4   (ECF No. 10.)  The Court issued an order that same day, setting forth the reasons for

5   denying the temporary restraining order.  (ECF No. 10.)  The Court then set oral

6   argument on the motion for preliminary injunction, which was held on May 10, 2013.

7

8                        **STANDARD**

9

10      The purpose of a preliminary injunction is to preserve the relative positions of the

11   parties—the status quo—until a trial on the merits can be conducted.  LGS Architects,

12   Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir. 2006) (quoting Univ. of

13   Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  "'A preliminary injunction . . . is not a

14   preliminary adjudication on the merits but rather a device for preserving the status quo

15   and preventing the irreparable loss of rights before judgment.'"  U.S. Philips Corp. v.

16   KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010) (quoting Sierra On–Line, Inc. v.

17   Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir.1984)).

18      A plaintiff seeking a preliminary injunction must establish that he is (1) "likely to

19   succeed on the merits"; (2) "likely to suffer irreparable harm in the absence of preliminary

20   relief"; (3) "the balance of equities tips in his favor"; and (4) "a preliminary injunction is in

21   the public interest."  Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008)); see

22   also Am. Trucking Ass'ns, Inc. v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009)

23   (adopting the preliminary injunction standard articulated in Winter).  "If a plaintiff fails to

24   meet its burden on any of the four requirements for injunctive relief, its request must be

25   denied."  Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010)

26   (citing Winter, 555 U.S. at 22).

27   ///

28   ///

1   "In each case, courts must balance the competing claims of injury and must consider the

2   effect on each party of the granting or withholding of the requested relief." Winter,

3   555 U.S. at 24 (quoting Amoco Prod. Co., 480 U.S. 531, 542 (1987)).

4           Alternatively, under the so-called sliding scale approach, as long as the plaintiff

5   demonstrates the requisite likelihood of irreparable harm and shows that an injunction is

6   in the public interest, a preliminary injunction can still issue so long as serious questions

7   going to the merits are raised and the balance of hardships tips sharply in the plaintiffs'

8   favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

9   (concluding that the "serious questions" version of the sliding scale test for preliminary

10  injunctions remains viable after Winter).

11          A "preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren,

12  553 U.S. 674, 690 (2008).  Thus, a district court should enter a preliminary injunction

13  only "upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at

14  21 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

15

16                                      **ANALYSIS**

17

18          Plaintiffs request that the Court order that Defendants: (1) "[I]mmediately cease

19  and desist accessing, utilizing, divulging, or making use in any manner, confidential

20  trade secret information relating to the identity of, or any information regarding, Farmers

21  policyholders"; (2) "[I]mmediately cease and desist duplicating, copying, condensing, or

22  summarizing trade secret policyholder information obtained from Farmers' computer

23  database or from hard copy or electronic files of former Farmers agents";

24  (3) "[I]mmediately cease and desist duplicating, copying, condensing, or summarizing

25  information obtained from Farmers' computer databases or the files of former Farmers

26  agents that pertains to policyholder expirations or other policyholder information"; and

27  ///

28  ///

1    (4) "[I]mmediately cease and desist disseminating, transferring, publishing, or

2    communicating to any other person, including competing insurance carriers, Farmers'

3    trade secret policyholder information."  (ECF No. 5-1 at 7.)

4        Plaintiffs also ask that the Court order that Defendant McCarren immediately

5    cease and desist from, for a period of one year, directly or indirectly soliciting, accepting,

6    or servicing the insurance business of any policyholder previously serviced by Defendant

7    McCarren when he was an agent of Farmers.  (Id.)  Additionally, Plaintiffs ask that "all

8    non-Defendants appointed by the Steele Insurance Agency who were agents or District

9    Managers of Farmers within the last year to immediately cease and desist from, for a

10   period of one year, directly or indirectly soliciting, accepting, or servicing the insurance

11   business of any policyholder previously serviced by that person when they were agents

12   and/or District Managers of Farmers."  (Id.)

13        Finally, Plaintiffs ask that the Court compel "Defendants . . . to allow Farmers

14   reasonable access to each and every computer and other device, including all off-site

15   internet data storage . . . capable of storing electronic information in their possession,

16   custody, and control wherever located, to determine if it contains any trade secret

17   policyholder information, and if so, to be permanently deleted from the memory of these

18   computers and devices."  (Id.)

19

20    **A.    Procedural Issues**

21

22        Defendants object to much of Plaintiffs' proffered evidence as hearsay.  (Defs.'

23   Evidentiary Objections, ECF No. 7-1.)  However, "[a] district court may consider hearsay

24   in deciding whether to issue a preliminary injunction."  Johnson v. Couturier, 572 F.3d

25   1067, 1083 (9th Cir. 2009) (citing Republic of the Philippines v. Marcos, 862 F.2d 1355,

26   1363 (9th Cir. 1988) (en banc); Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1394 (9th

27   Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to

28   do so serves the purpose of preventing irreparable harm before trial.")).

1  Thus, to the extent that Plaintiffs' evidence constitutes hearsay, the Court may

2  nonetheless consider that evidence when ruling on Plaintiffs' motion for a preliminary

3  injunction.

4

5  **B.     Substantive Issues**

6

7  **1.     Likelihood of Success on the Merits**

8

9  Plaintiffs argue that "Farmers' customer lists, policyholder information, and

10  proprietary materials constitute protectable trade secrets" (ECF No. 5-1 at 16) and that

11  Defendants' actions constitute misappropriation of those trade secrets (id. at 17).

12  California has adopted the Uniform Trade Secrets Act ("UTSA").  MAI Sys.

13  Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993), cert. denied, 510 U.S.

14  1033 (1993).  To prevail on their trade secret misappropriation claim, Plaintiffs must

15  satisfy "two primary elements": "(1) the existence of a trade secret, and (2)

16  misappropriation of the trade secret."  AccuImage Diagnostics Corp. v. Terarecon, Inc.,

17  260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3426.1(b)).

18

19  Existence of a Trade Secret

20  The UTSA defines a "trade secret" as "information, including a formula, pattern,

21  compilation, program, device, method, technique, or process, that . . . [d]erives

22  independent economic value, actual or potential, from not being generally known to the

23  public or to other persons who can obtain economic value from its disclosure or use; and

24  . . . is the subject of efforts that are reasonable under the circumstances to maintain its

25  secrecy."  Cal. Civ. Code § 3426.1(d).

26  ///

27  ///

28  ///

1    "It is well-established that a customer list may constitute a protectable trade

2    secret." Wyndham Resort Dev. Corp. v. Bingham, No. 2:10-cv-01556-GEB-KJM, 2010

3    WL 2720920, at *5 (E.D. Cal. July 8, 2010) (quoting Gable-Leigh, Inc. v. N. Am. Miss,

4    No. CV 01-01019 MMM (SHX), 2001 WL 521695, at *15 (C.D. Cal. Apr. 13, 2001)); see

5    also Robert Half Int'l, Inc. v. Murray, No. CV F 07-0799 LJO SMS, 2008 WL 2625857, at

6    *4 (E.D. Cal. June 25, 2008) ("A customer list acquired by lengthy and expensive efforts

7    deserves protection as a trade secret") (citing MAI Sys., 991 F.2d at 521; Courtesy

8    Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1288 (1990)).  In Morlife, Inc. v.

9    Perry, the California Court of Appeal gave a detailed explanation of the circumstances in

10   which a customer list is entitled to trade secret protection under California law and the

11   UTSA:

12              [C]ourts are reluctant to protect customer lists to the extent
                they embody information which is "readily available" through
13              public sources, such as business directories.  On the other
                hand, where the employer has expended time and effort
14              identifying customers with particular needs or characteristics,
                courts will prohibit former employees from using this
15              information to capture a share of the market.  Such lists are
                to be distinguished from mere identities and locations of
16              customers where anyone could easily identify the entities as
                potential customers.  As a general principle, the more difficult
17              the information is to obtain, and the more time and resources
                expended by an employer in gathering it, the more likely a
18              court will find such information constitutes a trade secret.

19   56 Cal. App. 4th 1514, 1521-22 (1997).

20          Here, Plaintiffs' customer lists do not consist solely of the customers' names,

21   birthdates, and driver's license numbers, which information would be "readily available"

22   to the public.  Rather, the customer lists contain information including names, addresses,

23   and telephone numbers, as well as "the amounts and types of insurance purchased from

24   the company, premium amounts, the character, location, and description of insured

25   property, personal history data of insurance policyholders, and renewal and expiration

26   dates of policies in force."  (ECF No. 5-1 at 17.)  Plaintiffs provide the Declaration of Rod

27   Chamberlain, the Assistant Vice President of eBusiness/AIMS at Farmers Group, Inc.,

28   which is the attorney-in-fact for Plaintiff Farmers Insurance Exchange.

                                        12

1   (Decl. Rod Chamberlain 2, ECF No. 5-3.)  In his declaration, Mr. Chamberlain attests

2   that eCMS database contains "name address, telephone, social security number,

3   driver's license number, policy expiration date, insured property, claims history, financial,

4   and other information on Farmers' policyholders."  (ECF No. 5-3 at 2.)  Plaintiffs also

5   contend that compiling their information about the customers' particular characteristics

6   involved the expenditure of considerable time and resources.  To support this

7   proposition, Mr. Chamberlain attests that "Farmers has invested and continues to invest

8   significant time, labor and capital to developing its proprietary database of customer

9   information.  On an ongoing basis, Farmers also invests significant resources updating,

10  maintaining, and securing its proprietary database of customer information."  (Id. at 3.)  It

11  causes the Court some concern that Plaintiffs do not provide any specifics regarding

12  their expenditure of time and resources in compiling and maintaining the information in

13  their customer lists.  However, at this point, Plaintiffs have put forth enough evidence to

14  demonstrate that the customer lists at issue contain information that is difficult to obtain,

15  and that Plaintiffs have devoted time and effort to gathering this information.

16         As to the UTSA requirement that the material have "economic value," the Court of

17  Appeal stated:

18              The requirement that a customer list must have economic
                value to qualify as a trade secret has been interpreted to
19              mean that the secrecy of this information provides a business
                with a "substantial business advantage."  In this respect, a
20              customer list can be found to have economic value because
                its disclosures would allow a competitor to direct its sales
21              efforts to those customers who have already shown a
                willingness to use a unique type of service or product as
22              opposed to a list of people who only might be interested.  Its
                use enables the former employee to "solicit both more
23              selectively and more effectively.

24  Id.

25  ///

26  ///

27  ///

28  ///

13

1    In the present case, Plaintiffs provide evidence that the information contained in

2  their customer lists and on their eCMS database has "substantial economic value to

3  Farmers" and would have economic value if available to Farmers' competitors because

4  "[c]ompetitors can far more easily solicit Farmers' policyholders to change insurance

5  providers of those competitors obtained access to" the information contained in the

6  eCMS database.  (Chamberlain Decl., ECF No. 5-3 at 2.)

7    Furthermore, Plaintiffs have shown that they took reasonable measures under the

8  circumstances to maintain the secrecy of their customer lists.  Mr. Chamberlain's

9  declaration again provides evidence relevant to this point.  Mr. Chamberlain states:

> Farmers maintains its Confidential Policyholder Information, including policy expirations, on a password and user-ID protected system.  In addition, when an individual Farmers agent accesses eCMS, Farmers provides an eCMS "view" that is unique to that particular Farmers insurance agent.  The eCMS "view" enables agents (and their authorized staffs) to access customer information for only those Farmers customers serviced by each individual agent on behalf of Farmers. . . .  At the time of termination of an agent's Agent Agreement, the access of that agent and their staff to eCMS (and the Agency Dashboard) is turned off and their user ID/password combination is no longer valid.

17  (ECF No. 5-3 at 3.)  Mr. Chamberlain also attests that "Farmers . . . protects its

18  Confidential Policyholder Information by issuing company policies regarding access to

19  and preservation of Confidential Policyholder Information, by maintaining copies of those

20  policies on the Agency Dashboard.  Farmers periodically reminds its insurance agents of

21  Farmers' confidentiality policies via bulletins, yearly compliance memoranda, and other

22  communications."  (ECF No. 5-3 at 4.)  Finally, "each time an agent . . . accesses

23  Farmers' proprietary system through the Agency Dashboard, they must acknowledge

24  that they have read and understood an additional separate 'Notice' and agree to be

25  bound by its terms."  (Id.)

26  ///

27  ///

28  ///

1   "[T]he Notice provides that the information [the agent is] accessing is 'proprietary,

2   confidential and trade secret information of Farmers,' and that use of the information is

3   'intended for use in connection with legitimate business purposes related to the agent's

4   Farmers agency and Farmers, and is not intended to be used for other purposes . . . ."

5   (Id.)  This evidence is adequate to establish that the relevant trade secrets are "subject

6   of efforts that are reasonable under the circumstances to maintain [their] secrecy," as

7   required by the UTSA.  See Cal. Civ. Code § 3426.1(d).

8          Because Plaintiffs have shown that the Confidential Policyholder Information is

9   "information" that "[d]erives independent economic value, actual or potential, from not

10  being generally known to the public or to other persons who can obtain economic value

11  from its disclosure or use; and . . . is the subject of efforts that are reasonable under the

12  circumstances to maintain its secrecy," Cal. Civ. Code § 3426.1(d), Plaintiffs have shown

13  that their customer lists likely constitute a protectable trade secret under the UTSA.

14

15          Misappropriation

16          The next issue is whether Plaintiffs have shown a likelihood of success as to the

17  "misappropriation" prong of the UTSA's test.  The UTSA defines "misappropriation" as:

18              (1) Acquisition of a trade secret of another by a person who
19              knows or has reason to know that the trade secret was
                acquired by improper means; or

20              (2) Disclosure or use of a trade secret of another without
21              express or implied consent by a person who:

22              (A) Used improper means to acquire knowledge of the trade
                secret; or

23              (B) At the time of disclosure or use, knew or had reason to
24              know that his or her knowledge of the trade secret was:

25              (i) Derived from or through a person who had utilized
                improper means to acquire it;

26              (ii) Acquired under circumstances giving rise to a duty to
27              maintain its secrecy or limit its use; or

28

                                15

1   (iii) Derived from or through a person who owed a duty to the
    person seeking relief to maintain its secrecy or limit its use;
2   . . . .

3   Cal. Civ. Code § 3426.1(b).  "Actual or threatened misappropriation may be enjoined."

4   Id. § 3426.2(a); see also Wyndham Resort Dev. Corp., 2010 WL 2720920, at *6 (citing

5   Cent. Valley Gen. Hosp. v. Smith, 162 Cal. App. 4th 501, 524 (2008)).

6       Plaintiffs allege that Defendants misappropriated Plaintiffs' trade secrets by

7   "accessing and utilizing Confidential Policyholder Information to directly or indirectly

8   solicit the insurance business of Farmers customers."  (ECF No. 5-1 at 18.)  According to

9   Plaintiffs, Defendants "have downloaded policyholder information of and/or retained the

10  files of thousands of Farmers customers, and have used and are now using that

11  information to target, solicit, and switch Farmers' customers."  (Id.)  More specifically,

12  Plaintiffs contend that subsections (B)(ii) and (iii) of California Civil Code section

13  3426.1(b) apply in this case.  (ECF No. 5-1 at 18.)  To this end, Plaintiffs argue that

14  "[t]hrough their contracts with Farmers and their acknowledgment of the confidential and

15  proprietary nature of Farmers policyholder information each time they logged onto

16  Farmers computer system, Defendants assumed both the contractual obligation and the

17  duty at law to maintain the secrecy of Farmers' confidential policyholder information,

18  return it to Farmers when the agency relationship ended, and not to use it to Farmers'

19  detriment."  (ECF No. 5-1 at 18.)  Additionally, Plaintiffs contend that, "even those

20  defendants who have no contractual relationship with Farmers are required to refrain

21  from violating Farmers' proprietary Confidential Policyholder Information."  (Id.)

22      Defendants argue that Plaintiffs' evidence does not establish that any Defendant

23  misappropriated Plaintiffs' trade secrets.  Defendants contend that they had full authority

24  to access Plaintiffs' Confidential Policyholder Information.  (ECF No. 7 at 12.)

25  ///

26  ///

27  ///

28  ///

16

1    Furthermore, Defendants contend that Farmers has lost only 188 policies, a number

2    which is insufficient to show any improper behavior or misappropriation by Defendants,

3    in light of the fact that Farmers has a total of 2.1 million policies in its seventy-two

4    districts, and Defendant Steele had in excess of 47,000 policies in force in his district at

5    the time that he left Farmers.  (Id.)  Defendants also argue that Defendants have a right

6    to compete with Farmers and are not prohibited from soliciting Farmers' customers.

7          Defendants' arguments are insufficient to refute Plaintiffs' evidence that

8    misappropriation occurred.  In moving for a preliminary injunction, Plaintiffs are not

9    required to prove that misappropriation actually has occurred—Plaintiffs need only make

10   a clear showing that misappropriation likely occurred.  The Court finds that Plaintiffs

11   have met that standard, as "[m]isappropriation occurs if information from a customer

12   database is used to solicit customers."  MAI Sys. Corp., 991 F.2d at 521 (emphasis

13   added).  Here, Plaintiffs present ample evidence that Defendants used Plaintiffs'

14   customer database and Confidential Policyholder Information to solicit customers.

15         First, Ruth Epperson, a former Farmers customer, submitted a declaration and

16   testified in court.  Her declaration states that she was a Farmers customer until July

17   2012.  (Epperson Decl. 2, ECF No. 15-2.)  In the summer of 2012, her insurance agent

18   was Defendant McCarren.  (Id.)  Defendant McCarren contacted Mrs. Epperson and

19   asked for an appointment to discuss Mrs. Epperson's insurance policies.  (Id.)

20   Defendant McCarren came to Mrs. Epperson's home on July 25, 2012, where Defendant

21   McCarren told Mrs. Epperson that he was leaving Farmers and stated to Mrs. Epperson

22   that he wanted her to switch to Allied Insurance.[3]  (Id.)  As a result of Defendant

23   McCarren's requests, Mrs. Epperson moved her insurance to Allied Insurance.  (Id.)

24   Defendant McCarren gave his resignation to Farmers on August 3, 2012, which became

25   effective on November 3, 2012.  (McCarren Decl. 2, ECF No. 7-4.)

26   ///

27   _____

28         [3] Although Mrs. Epperson's declaration states that Defendant McCarren contacted Mrs. Epperson on July 25, 2012, Mrs. Epperson testified in court that the appointment took place on July 25, 2012.

1    Thus, the evidence shows that Defendant McCarren solicited Mrs. Epperson to change

2    her insurance coverage, away from Farmers, while Defendant McCarren was still a

3    Farmers agent.  While "merely informing a former employer's customers of a change in

4    employment, without more, is not solicitation," MAI Sys. Corp., 991 F.2d at 521,

5    Defendant McCarren clearly did more than simply inform Mrs. Epperson that he was

6    leaving Farmers.  Indeed, Defendant McCarren stated to Mrs. Epperson that he wanted

7    her to switch to Allied Insurance.  (Epperson Decl. 2, ECF No. 15-2.)  Thus, the evidence

8    clearly shows that Defendant McCarren used Farmers' customer lists and customer

9    information to solicit Mrs. Epperson's business.  Notably, Defendants offered absolutely

10   no evidence to refute Mrs. Epperson's testimony.  Such conduct constitutes

11   misappropriation, as Defendant McCarren likely "use[d] of a trade secret of another

12   without express or implied consent by a person who . . . [a]t the time of disclosure or

13   use, knew or had reason to know that his or her knowledge of the trade secret was . . .

14   [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limits its

15   use . . . ."  Cal. Civ. Code § 3426.1(b)(2)(B)(ii).

16        Plaintiffs also offer the testimony of Steven Salentine, a Farmers customer, who

17   submitted a declaration and testified at the hearing that he received a letter from

18   Defendant Perkins in December 2012, asking Mr. Salentine to move his insurance

19   business away from Farmers.  The letter states, "I use [sic] to work for Charlies [sic]

20   Finister [sic] who was an agent for Farmers Insurance.  Now I am working for Steele

21   Insurance Agency Inc.  As an Independent Broker I can shop around and get you the

22   best coverage for the best price.  . . . It is worth a call to get your free quote before you

23   pay your next insurance bill."  (Ex. A to Salentine Decl. 3, ECF No. 15-4.)  Defendant

24   Perkins later called Mr. Salentine and started to talk to Mr. Salentine about the possibility

25   of changing insurance.  (Prelim. Inj. Hr'g Tr. 14, May 10, 2013.)  At the hearing,

26   Mr. Salentine testified that he believed that Defendant Perkins had taken his personal

27   information from Mr. Finister and Farmers insurance to solicit Mr. Salentine's business.

28   (Hr'g Tr. 14.)

1    Given the evidence presented by Plaintiffs, and Defendants' failure to refute this

2    evidence, the Court must agree with Mr. Salentine.  The evidence presented

3    demonstrates that Defendant Perkins likely "use[d] . . . a trade secret of another without

4    express or implied consent," and Defendant Perkins either "used improper means to

5    acquire knowledge of the trade secret" or "[a]t the time of . . . use, knew or had reason to

6    know that . . . her knowledge of the trade secret was . . . acquired under circumstances

7    giving rise to a duty to maintain its secrecy or limit its use," or "[a]t the time of . . . use,

8    knew or had reason to know that . . . her knowledge of the trade secret was . . . derived

9    from or through a person who owed a duty to the person seeking relief [here, Farmers,]

10   to maintain its secrecy or limit its use."  Cal. Civ. Code § 3426.1(b)(2)(A);

11   3426.1(b)(2)(B)(ii)-(iii).  In short, Defendant Perkins attempted to solicit Mr. Salentine's

12   insurance business and likely used Farmers' customer lists and confidential customer

13   information to do so.

14          Next, Plaintiffs submitted the declaration of Roxanna Castro.  (Decl. Roxanna

15   Castro, ECF No. 15-1.)  Ms. Castro states that she worked for Charlie Finister at

16   Farmers.  (ECF No. 15-1 at 2.)  When Mr. Finister informed Ms. Castro that he would be

17   retiring, Ms. Castro decided to leave Mr. Finister's agency and spoke to Defendant

18   Blalock.  (Id.)  Defendant Blalock informed Ms. Castro that she "could come and work for

19   Steele Insurance Agency.  [Defendant Blalock] told [Ms. Castro] that [she] would just

20   need to obtain the contact and renewal information regarding 100 of the Farmers

21   customers that [Mr. Finister] serviced and bring them with [Ms. Castro] to Steele

22   Insurance Agency."  (Id.)  Ms. Castro decided not to take the course of action proposed

23   by Defendant Blalock.  (Id.)  While Ms. Castro's declaration does not establish that

24   Defendants misappropriated information, her declaration does show that Defendants

25   likely attempted to misappropriate Farmers' confidential customer information.

26   ///

27   ///

28   ///

19

1   This evidence weighs in Plaintiffs' favor, and further supports the Courts' conclusion that

2   Plaintiffs have shown by clear evidence that they are likely to prevail on the merits of

3   their trade secret misappropriation claim, as this evidence shows that Defendants did

4   indeed attempt to misappropriate Plaintiffs' trade secrets.

5           Finally, the sheer amount of information downloaded by Defendants cannot be

6   overlooked.  At the hearing, Mr. Butler testified that "there was an aggressive access of

7   information in successive short periods of time . . . ."  (Hr'g Tr. 24.)  Mr. Butler also

8   testified that a Defendant McCarren or a member of Mr. McCarren's team "downloaded

9   the entire book of business report which would give them a number of components of

10  information about the customers."  (Id.)  As to Defendant McCarren's activity, there was

11  a download every two or three minutes for five days.  (Hr'g Tr. 24; see also ECF No. 5-4

12  to 5-7 (showing activity from Defendant McCarren's account).)  Mr. Butler testified that

13  Defendant McCarren's behavior was not "consistent with servicing clients, answer phone

14  calls that come in, responding to letters, and so on."  (Hr'g Tr. 26.)  Instead, Mr. Butler

15  stated that Defendant McCarren's activity is "consistent with someone accessing

16  information specifically for the purposes of downloading or gathering that information.

17  It's not information that we would believe to be consistent with servicing a policyholder."

18  (Hr'g Tr. 27.)  Additionally, Mr. Butler stated that information downloaded from

19  Mr. Finister's account, allegedly by Defendant Perkins, included "the entire book of

20  business, [which includes] inactive files, canceled files, prospects, [expiration] dates."

21  (Hr'g Tr. 60.)  This evidence strongly suggests that Defendants improperly accessed and

22  retained Farmers' trade secrets for Defendants' own use.

23          Certainly not all of Plaintiffs' evidence has the force that Plaintiffs contend it does.

24  For example, the Court questions whether the document which Plaintiffs claim is

25  "obviously training materials from Troy Steele to McCarren, apparently showing

26  McCarren the papers and strategies to employ in switching customers from Farmers to

27  Steele's agency," is the smoking gun Plaintiffs assert it is.  (Butler Decl. 4, ECF No. 5-14

28  (discussing Ex. F, ECF No. 5-15).)

1    Nonetheless, the Court finds that, on balance, Plaintiffs have shown with clear evidence

2    that they have a likelihood of succeeding on the merits of their trade secret

3    misappropriation claim under the UTSA.  Thus, the first prong of the preliminary

4    injunction analysis is met.  Accordingly, the Court need not analyze Plaintiffs' likelihood

5    of success on their remaining claims.

6

7                    **2.      Likelihood of Irreparable Harm**

8

9            Plaintiffs also argue they will suffer irreparable harm if Defendants are not

10   enjoined from using the confidential, proprietary information obtained from Plaintiffs'

11   customer lists.  (ECF No. 5-1 at 20.)  Specifically, Plaintiffs argue that "[i]f Defendants'

12   illegitimate behavior is not enjoined, such ongoing conduct threatens ongoing and

13   presently unknown business losses for Farmers."  (ECF No. 5-1 at 20; Butler Decl., ECF

14   No. 5-14; Cedre Decl., ECF No. 5-11.)  Plaintiffs state that Defendants' misappropriation

15   of Plaintiffs' trade secrets is eroding Farmers' competitive position, to the benefit of

16   Defendants.

17           "Evidence of threatened loss of prospective customers or goodwill . . . supports a

18   finding of the possibility of irreparable harm."  Stuhlbarg Int'l Sales Co. v. John D. Brush

19   & Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001); see also Gallagher Benefit Servs., Inc. v.

20   De La Torre, 283 F. App'x 543, 546 (9th Cir. 2008) (affirming conclusion that injury to

21   goodwill and customers due to trade secret misappropriation constitutes irreparable

22   harm).  Indeed, the Northern District of California has observed that "California courts

23   have presumed irreparable harm when proprietary information is misappropriated."  TMX

24   Funding, Inc. v. Impero Techs., Inc., No. C. 10-00202 JF (PVT), 2010 WL 1028254, at *8

25   (N.D. Cal. Mar. 18, 2010).  Furthermore, when a plaintiff "risk[s] . . . losing established

26   customers to defendants . . . due to [the] defendants' improper use of [the] plaintiff's

27   proprietary information," there is "obviously . . . a lasting, irreparable harm."  Lillge v.

28   Verity, No. C 07-2748, 2007 WL 2900568, at *7 (N.D. Cal. Oct. 2, 2007).

1  Because Plaintiffs have shown that they risk losing established customers to

2  Defendants, due to Defendants' improper use of Plaintiffs' Confidential Policyholder

3  Information, Plaintiffs have successfully shown that they are likely to suffer irreparable

4  harm in the absence of injunctive relief, and have thus satisfied the second prong of the

5  preliminary injunction analysis.

6

7  **3.      Balance of Hardships**

8

9  Plaintiffs next argue that the balance of equities tips in their favor because

10  "Defendants have no contractual, equitable, or other right to retain possession of the

11  trade secret information at issue."  (ECF No. 5-1 at 19.)  Thus, Plaintiffs argue that "[i]n

12  the absence of any legal right to possess Farmers' trade secret information, Defendants

13  cannot establish any harm resulting from the order to return Farmers' trade secret

14  information to [Farmers], and stop violating the law protecting those trade secrets."  (Id.)

15  Plaintiffs therefore contend that enjoining Defendants would merely return the parties to

16  the status quo.

17  The injunctive relief sought by Plaintiffs is broad and would prohibit Defendants

18  from accessing, utilizing, divulging, duplicating, copying, condensing, summarizing,

19  transferring, publishing, communicating, or making use in any manner, confidential trade

20  secret information relating to the identity of, or any information regarding, Farmers

21  policyholders, including information obtained from Farmers' computer database or from

22  hard copy or electronic files of former Farmers agents.  (ECF No. 5-1 at 5.)  Plaintiffs

23  also seek to enjoin Defendant McCarren from directly or indirectly soliciting, accepting,

24  or servicing the insurance business of any policyholder previously serviced by Defendant

25  McCarren when he was an agent of Farmers, for a period of one year.  (Id.)

26  ///

27  ///

28  ///

22

1  Additionally, Plaintiffs seek to enjoin "all non-Defendants appointed by the Steele

2  Insurance Agency who were agents or District Managers of Farmers within the last year .

3  . . from, for a period of one year, directly or indirectly soliciting, accepting, or servicing

4  the insurance business of any policyholder previously serviced by that person when they

5  were agents and/or District Managers of Farmers."  (Id.)  Finally, Plaintiffs ask that the

6  Court compel "Defendants . . . to allow Farmers reasonable access to each and every

7  computer and other device, including all off-site internet data storage . . . capable of

8  storing electronic information in their possession, custody, and control wherever located,

9  to determine if it contains any trade secret policyholder information, and if so, to be

10  permanently deleted from the memory of these computers and devices."  (Id.)

11      Courts have found that the balance of hardships tips in favor of a plaintiff

12  seeking an injunction which would "merely prohibit [the d]efendants from

13  misappropriating the trade secrets of [the p]laintiff."  Merrill Lynch, Pierce Genner &

14  Smith Inc. v. Chung, No. CV 01-00659 CBM RCX, 2001 WL 283083, at *6 (C.D. Cal.

15  Feb. 2, 2001); see also Wyndham Resort Devel. Corp., 2010 WL 2720920, at *7 (finding

16  balance of hardships tipped in favor of plaintiff when plaintiffs had "vital interest in

17  protecting [their] trade secret information").  However, "[i]njunctive relief . . . must be

18  tailored to remedy the specific harm alleged" and "[a]n overbroad injunction is an abuse

19  of discretion."  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1119 (9th Cir. 2009) (quoting

20  Lamb–Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991)).  In other

21  words, "[w]here injunctive relief is warranted, the order must be narrowly tailored to

22  'remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible

23  breaches of the law.'"  Gallagher Benefit Servs., Inc., 283 F. App'x at 546 (quoting

24  Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004)).

25  ///

26  ///

27  ///

28  ///

1    In this case, the balance of hardships weighs in favor of Plaintiffs only as to

2    certain aspects of the relief sought.  Enjoining Defendants from accessing, utilizing,

3    divulging, duplicating, copying, condensing, summarizing, transferring, publishing,

4    communicating, or making use in any manner, confidential trade secret information

5    relating to the identity of, or any information regarding, Farmers policyholders, including

6    information obtained from Farmers' computer database or from hard copy or electronic

7    files of former Farmers agents, is reasonable under the circumstances, will maintain the

8    status quo, and will prevent Defendants from continuing to misappropriate, or benefit

9    from their prior misappropriation of, Plaintiffs' trade secrets.

10    However, it is a closer call whether the Court should enjoin Defendant McCarren

11    from accepting or servicing the business of any policyholder that he previously serviced

12    when he was an agent at Farmers.  (See ECF No. 5-1 at 7.)  While Plaintiffs have

13    presented evidence showing that Defendant McCarren likely misappropriated Plaintiffs'

14    trade secrets and used those trade secrets to solicit Farmers' customers to switch

15    insurance, it is also entirely possible that some of Defendant McCarren's clients simply

16    wish to follow him, and give their business to the Steele Insurance Agency.  It would be

17    inappropriate to prevent individuals from exercising this choice when Defendant

18    McCarren did not solicit the policyholders to change insurance.

19    The Court likewise finds problematic Plaintiffs' request that the Court order "all

20    non-Defendants appointed by the Steele Insurance Agency who were agents or District

21    Managers of Farmers within the last year to immediately cease and desist from, for a

22    period of one year, directly or indirectly soliciting, accepting, or servicing the insurance

23    business of any policyholder previously serviced by that person when they were agents

24    and/or District Managers of Farmers."  (ECF No. 5-1 at 7.)  To the extent that these

25    individuals are agents or employees of Defendant Steele Insurance Agency, the Court's

26    order that Defendant Steele Insurance Agency must cease and desist from making use

27    of Farmers' trade secrets in any manner is sufficient to address Plaintiffs' concerns in

28    this respect.

1  Although the unlawful use of trade secrets to solicit a former employer's customers is

2  prohibited under California law, "California courts have shown a reluctance to impose an

3  unconditional prohibition on doing business with customers of the former employer."

4  Morlife, 56 Cal. App. 4th at 1525.  Thus, an injunction prohibiting all solicitation of

5  Farmers customers is too broad, particularly in light of the fact that Defendants will be

6  enjoined from using Plaintiffs' trade secrets to solicit clients or conduct business.

7      Finally, Plaintiffs ask that the Court compel "Defendants . . . to allow Farmers

8  reasonable access to each and every computer and other device, including all off-site

9  internet data storage . . . capable of storing electronic information in their possession,

10  custody, and control wherever located, to determine if it contains any trade secret

11  policyholder information, and if so, to be permanently deleted from the memory of these

12  computers and devices."  (ECF No. 5-1 at 7.)  This relief goes beyond what is necessary

13  to prevent Defendants from misappropriating Plaintiffs' trade secret information and

14  would impose too great of a hardship on Defendants.  Allowing Plaintiffs to access

15  Defendants' computers would not maintain the status quo and may indeed give Plaintiffs

16  access to Defendants' own trade secrets.  Again, the Court's order enjoining

17  Defendants, including Defendant Steele Insurance Agency and its employees and

18  agents from making use of Farmers' trade secrets in any manner, is sufficient to

19  maintain the status quo.

20

21      **4.      The Public Interest**

22

23      It is "in the public interest that trade secret customer lists be protected."

24  Wyndham Resort Devel. Corp., 2010 WL 2720920, at *7 (quoting Gable-Leigh, 2001 WL

25  521695, at *20).  Indeed, "it is hard to see how the public would be benefitted by

26  disclosure of customer lists."  Id. (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470

27  (1974)).  As stated by the court in Morlife, "[t]o be sure, we acknowledge the important

28  legal right of persons to engage in businesses and occupations of their choosing . . . .

1    Yet also fundamental to the preservation of our free market economic system is the

2    concomitant right to have the ingenuity and industry one invests in the success of the

3    business or occupation protected from the gratuitous use of that 'sweat-of-the-brow' by

4    others."  56 Cal.App.4th at 1520; see also Pyro Spectaculars N., Inc. v. Souza,

5    861 F. Supp. 2d 1079, 1092-93 (E.D. Cal. 2012) (quoting Morlife).

6         For these reasons, the Court finds that a preliminary injunction is in the public

7    interest, and the fourth factor of the preliminary injunction analysis is met.

8

9         **C.     Bond**

10

11        Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a

12   preliminary injunction or temporary restraining order only if the movant gives security in

13   an amount that the court considers proper to pay the costs and damages sustained by

14   any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

15   Although the plain language of the rule suggests that a bond is mandatory, the Ninth

16   Circuit has held that Rule 65(c) "invests the district court with discretion as to the amount

17   of security required, if any."  Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009).

18   A district court need not require a bond "when it concludes there is no realistic likelihood

19   of harm to the defendant from enjoining his or her conduct."  Jorgensen v. Cassiday,

20   320 F.3d 906, 919 (9th Cir. 2003).  Here, there is no realistic likelihood that Defendants

21   will be harmed by being enjoined from using Plaintiffs' trade secrets.  As such, no

22   security will be required for the preliminary injunction to issue.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

For the reasons just stated, Plaintiffs' motion for a preliminary injunction is GRANTED.  (ECF No. 5.)  The Court orders that Defendants, their agents, employees, and all those acting in concert with them who receive actual notice of this Order shall:

    1.    Immediately cease and desist accessing, utilizing, divulging, or making use in any manner, confidential trade secret information relating to the identity of, or any information regarding, Farmers policyholders;

    2.    Defendants shall immediately cease and desist duplicating, copying, condensing, or summarizing trade secret policyholder information obtained from Farmers' computer database or from hard copy or electronic files of former Farmers agents;

    3.    Immediately cease and desist duplicating, copying, condensing, or summarizing information obtained from Farmers' computer databases or the files of former Farmers agents that pertains to policyholder expirations or other policyholder information; and

    4.    Immediately cease and desist disseminating, transferring, publishing, or communicating to any other person, including competing insurance carriers, Farmers' trade secret policyholder information.

IT IS SO ORDERED.

DATED:  May 16, 2013

_____

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT