UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, et al., | No.  2:13-CV-00784-MCE-DAD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| STEELE INSURANCE AGENCY, INC., et al., | |
| Defendants. | |

Through this action, Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life Insurance Company (collectively "Plaintiffs" or "Farmers") seek relief from Defendants Steele Insurance Agency, Troy Steele ("Steele"), Ted Blalock ("Blalock"), Larry McCarren ("McCarren"), Bill Henton (referred to as "Defendant Henton" to distinguish him from his father, "Mr. Henton"), and Cindy Jo Perkins ("Perkins") (collectively "Defendants") for the alleged misappropriation of Plaintiffs' trade secrets, as well as other violations of state and federal law pertaining to the operation of Plaintiffs' and Defendants' respective insurance companies.

///

///

1

1    Specifically, the operative First Amended Complaint alleges the following causes of

2    action: (1) breach of contract against McCarren; (2) misappropriation of trade secrets

3    against all Defendants; (3) violation of the Computer Fraud and Abuse Act ("CFAA"), 18

4    U.S.C. § 1030(a)(2)(C), against Defendant Henton and Perkins; (4) violation of the

5    CFAA, 18 U.S.C. § 1030(a)(4), against Defendant Henton and Perkins; and (5) civil

6    conspiracy against all Defendants.  FAC, Aug. 14, 2013, ECF No. 35.

7         Presently before the Court is Blalock's Motion to Dismiss Plaintiffs' second and

8    fifth causes of action ("Blalock Motion") pursuant to Federal Rule of Civil Procedure

9    12(b)(6)[1] for failure to state a claim upon which relief can be granted.  Blalock Mot., Sept.

10   3, 2013, ECF No. 37.  Also before the Court is a Motion to Dismiss Plaintiffs' second,

11   third, fourth, and fifth causes of action by the Steele Insurance Agency, Steele,

12   McCarren, Henton, and Perkins' ("Steele Motion") pursuant to Rule 12(b)(6).  Steele

13   Mot., Sept. 3, 2013, ECF No. 38.  Farmers timely opposed these Motions.  Pls.' Opp'n,

14   Sept. 19, 2013, ECF No. 39; Pls.' Opp'n, Sept. 19, 2013, ECF No. 40.  For the reasons

15   set forth below, the Motions are GRANTED IN PART and DENIED IN PART.[2]

16

17                              **BACKGROUND[3]**

18

19        Farmers sells insurance policies to policyholders through independent contractor

20   agents.  Farmers' most valuable assets are their policyholders and the information that

21   Farmers maintains about each policyholder.  Farmers agents are exclusive agents for

22   Farmers' insurance products.

23   ///

24   _____

25        [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

26        [2] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

27

28        [3] The following recitation of facts is taken, sometimes verbatim, from Farmers' First Amended Complaint.  FAC at 4-13.

1   The agents may not promote or sell insurance policies issued by other insurers.  Each

2   Farmers agent must agree to use Farmers' trade secret customer information only in the

3   course of the agent's relationship with Farmers.  Each agent must further promise not to

4   divulge Farmers' trade secret customer information to third parties or to use it in any way

5   detrimental to Farmers.  This information is not shared with Farmers' competitors.

6         Farmers maintains databases, which include the Electronic Customer Marketing

7   System ("eCMS").  eCMS contains information about prospective, current, and former

8   policyholders, including name, address, telephone, social security number, driver's

9   license number, policy expiration date, insured property, claims history, discount

10  eligibility, and other information of Farmers' policyholders.  eCMS is an important tool on

11  the Farmers' "Agency Dashboard," accessed and used by Farmers' authorized

12  insurance agents.  The system enables authorized users to access Confidential

13  Policyholder Information about the policyholders they service, and allows agents to

14  create, among other things, policyholder reports, contact lists, and mailing labels.  Use of

15  eCMS is subject to certain confidentiality restrictions and security protections.

16        Farmers invests significant time, labor, and capital in developing the Confidential

17  Policyholder Information stored on eCMS.  The Confidential Policyholder Information is

18  not generally available in this aggregated form in the industry or to Farmers' competitors.

19  If this information was available to Farmers' competitors, those competitors could more

20  easily solicit Farmers' policyholders to change insurance providers.

21        Farmers maintains its Confidential Policyholder Information, including policy

22  expirations, on a password and user-ID protected system.  When an agent's Agency

23  Agreement is terminated, Farmers turns off the access of both agents and their staff to

24  eCMS and the Agency Dashboard, and the terminated agent's user ID and password

25  combination is no longer valid.  Farmers also issues company policies regarding access

26  to and preservation of Confidential Policyholder Information, by maintaining copies of

27  those policies on the Agency Dashboard.

28  ///

3

1   Periodically, Farmers reminds its insurance agents of its confidentiality policies

2   through bulletins, yearly compliance memoranda, and other communications.  Finally,

3   each time an agent accesses Farmers' proprietary system through the Agency

4   Dashboard, that agent must agree to be bound by the terms of a separate "Legal

5   Disclaimer."  The Legal Disclaimer provides that the information the agent is accessing

6   Farmers' proprietary, confidential, and trade secret information.

7   Defendants Troy Steele and Steele Insurance Agency

8   Steele was appointed as a District Manager for Farmers in 2001, pursuant to a

9   District Manager Appointment Agreement.  Subsequently, in January 2010, Farmers

10   terminated Steele's Agreement.  Thereafter, Steele began his own independent

11   insurance agency, the Steele Insurance Agency.  Steele and the Steele Insurance

12   Agency were not appointed or allowed to sell Farmers' insurance products.  Farmers

13   alleges Steele is using improper means to obtain access to Farmers' policyholder

14   information.  Farmers further contends Steele directs current and former Farmers

15   agents, or their staff members, to use Farmers' customer lists and other trade secret

16   information to solicit Farmers' customers to switch to the Steele Insurance Agency.

17   Farmers claims it has lost numerous customers previously serviced by McCarren,

18   Charlie Finister, and Defendant Henton's father, Mr. Henton, to the Steele Insurance

19   Agency as a result of Steele's trade secret misappropriation.

20   Defendant Larry McCarren

21   McCarren was appointed as a Farmers agent in January 1992, pursuant to an

22   Agency Appointment Agreement.  McCarren worked in the district of District Manager

23   Blalock until January 2012.  Blalock's District Manager Appointment Agreement was

24   terminated in January 2012.  Blalock then went to work for the Steele Insurance Agency.

25   According to Farmers, while McCarren was still a Farmers agent, he wrote

26   policies for other insurers in violation of his Agency Appointment Agreement.

27   In August 2012, McCarren terminated his Agreement with Farmers.

28   ///

4

1   His termination became effective November 3, 2012.  McCarren now works as an

2   insurance agent for the Steele Insurance Agency.

3        Following McCarren's resignation, customers complained to Farmers that

4   McCarren contacted them, attempting to switch their insurance policies to other carriers.

5   Farmers also alleges that prior to leaving Farmers, McCarren accessed Farmers'

6   computer system to download information regarding Farmers' policyholders, including

7   his entire customer list, so that he could use this information after he was no longer a

8   Farmer's agent.  Downloading this information violated McCarren's Agency Appointment

9   Agreement.  Farmers alleges that at the direction of Steele and Blalock, McCarren is

10  attempting to transfer Farmers' policyholders from Farmers to other insurers for the

11  benefit of the Steele Insurance Agency.

12        Defendant Cindy Jo Perkins

13        Perkins was McCarren's longtime employee.  However, in 2012, Perkins went to

14  work for another Farmers agent, Charlie Finister.  Throughout the year of 2012, Finister

15  was gravely ill with diabetes.  Finister resigned and went into hospice in November 2012.

16  Perkins did not have permission to sell Farmers' insurance products or to access

17  Farmers' computer systems.  Without permission, Perkins used Finister's user ID and

18  password combination to gain access to information from Farmers' computer system

19  while she worked in Finister's office.  Perkins is appointed with the Steele Insurance

20  Agency, and was so appointed when she accessed Farmers' computer system.  Perkins

21  now works together with Steele and Blalock to transfer Farmers' policyholders to other

22  insurers for the benefit of the Steele Insurance Agency.

23        Defendant Bill Henton

24        Mr. Henton, Defendant Henton's father, was a Farmers agent from 1968 to 2012.

25  In 2012, Mr. Henton's District Manager, Rudy Cedre, believed that Mr. Henton had

26  developed severe memory problems.  Defendant Henton worked in Mr. Henton's office,

27  but Defendant Henton was not appointed as a Farmers agent.

28  ///

1    In 2012, Mr. Henton resigned as a Farmers agent.  Prior to Mr. Henton's

2  resignation, Defendant Henton allowed his wife and daughter to access the Farmers

3  computer system to obtain Farmers' policyholder information.  Defendant Henton is also

4  in the process of becoming part of Steele Insurance Agency.  Defendant Henton remains

5  in control of the physical files relating to over 1600 Farmers policies, will not allow

6  Farmers to access these files, and arranged for his father's mail, including Farmers'

7  business mail, to be forwarded to Defendant Henton's new business address.

8  Defendant Henton is working together with Steele and Blalock to transfer Farmers'

9  policyholders from Farmers to other insurers, for the benefit of the Steele Insurance

10  Agency.

11

12                                        **STANDARD**

13

14    On a motion to dismiss for failure to state a claim under Federal Rule of Civil

15  Procedure 12(b)(6), all allegations of material fact must be accepted as true and

16  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

17  Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

18  statement of the claim showing that the pleader is entitled to relief" in order to "give the

19  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

20  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

21  47 (1957)).

22    A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

23  detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

24  his entitlement to relief requires more than labels and conclusions, and a formulaic

25  recitation of the elements of a cause of action will not do."  Id. (internal citations and

26  quotations omitted).

27  ///

28  ///

                                              6

1    A court is not required to accept as true a "legal conclusion couched as a factual

2    allegation." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009) (quoting <u>Twombly</u>, 550 U.S.

3    at 555).  "Factual allegations must be enough to raise a right to relief above the

4    speculative level." <u>Twombly</u>, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.

5    Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004) (stating that the pleading

6    must contain something more than "a statement of facts that merely creates a suspicion

7    [of] a legally cognizable right of action.")).

8         Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

9    assertion, of entitlement to relief." <u>Twombly</u>, 550 U.S. at 556 n.3 (internal citations and

10   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

11   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

12   the nature of the claim, but also 'grounds' on which the claim rests." <u>Id.</u> (citing 5 Charles

13   Alan Wright & Arthur R. Miller, <u>supra</u>, at § 1202).  A pleading must contain "only enough

14   facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  If the "plaintiffs . . .

15   have not nudged their claims across the line from conceivable to plausible, their

16   complaint must be dismissed." <u>Id.</u>  However, "[a] well-pleaded complaint may proceed

17   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

18   recovery is very remote and unlikely.'" <u>Id.</u> at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S.

19   232, 236 (1974)).

20        A court granting a motion to dismiss a complaint must then decide whether to

21   grant leave to amend.  Leave to amend should be "freely given" where there is no

22   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

23   to the opposing party by virtue of allowance of the amendment, [or] futility of the

24   amendment . . . ." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence Capital, LLC v.</u>

25   <u>Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the <u>Foman</u> factors as those to

26   be considered when deciding whether to grant leave to amend).  Not all of these factors

27   merit equal weight.

28   ///

7

1   Rather, "the consideration of prejudice to the opposing party . . . carries the

2   greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir.

3   1987).  Dismissal without leave to amend is proper only if it is clear that "the complaint

4   could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d

5   1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir.

6   2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave

7   need not be granted where the amendment of the complaint . . . constitutes an exercise

8   in futility . . . .")).

9

10                                      **ANALYSIS**

11

12   Farmers alleges five causes of action under state and federal law.  Blalock moves

13   to dismiss all claims alleged against him; namely, the second and fifth causes of action.

14   Blalock Mot. at 2.  The Steele Insurance Agency, Steele, McCarren, Henton, and Perkins

15   contend Farmers' fifth claim for civil conspiracy must be dismissed because it is

16   preempted by the California Uniform Trade Secrets Act ("UTSA"), and because it fails to

17   state a claim upon which relief can be granted.  Steele Mot. at 8, 9.  The Steele

18   Insurance Agency and Steele also contend that Farmers' claim for misappropriation of

19   trade secrets fails to state a claim against them.  Id. at 11.  Finally, Perkins and

20   Defendant Henton seek dismissal of Farmers' claims for violations of the CFAA.  Id. at

21   13.

22

23      **A.    Misappropriation of Trade Secrets**

24

25   Farmers alleges Defendants' actions constitute misappropriation of Farmers'

26   trade secrets under California's UTSA.

27   ///

28   ///

1   To prevail on their trade secret misappropriation claim, Farmers must show: "(1) the

2   existence of a trade secret, and (2) misappropriation of the trade secret." AccuImage

3   Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing

4   Cal. Civ. Code § 3426.1(b)).  Here, the existence of a trade secret is not contested.

5   However, Defendants contend that Farmers fails to allege facts sufficient to show

6   misappropriation.

7       The UTSA defines "misappropriation" as:

8       Disclosure or use of a trade secret of another without express
        or implied consent by a person who:
9

10      (A) Used improper means to acquire knowledge of the trade
        secret; or

11      (B) At the time of disclosure or use, knew or had reason to
        know that his or her knowledge of the trade secret was:
12

13          (i) Derived from or through a person who had utilized
            improper means to acquire it;

14          (ii) Acquired under circumstances giving rise to a duty
            to maintain its secrecy or limits its use; or
15

16          (iii) Derived from or through a person who owed a duty
            to the person seeking relief to maintain its secrecy or
            limit its use; . . . .
17

18   Cal. Civ. Code § 3426.1(b).

19      "A violation of the UTSA occurs when an individual misappropriates a former

20   employer's protected trade secret client list, for example, by using the list to solicit clients

21   or to otherwise attain an unfair competitive advantage."  Reeves v. Hanlon, 33 Cal. 4th

22   1140, 1155 (2004).  While an employee who leaves his employer can "announce his

23   new affiliation" to his clients, the employee cannot "actively solicit business for his new

24   company" using the employer's trade secrets.  Morlife, Inc. v. Perry, 56 Cal. App. 4th

25   1514, 1524 (1997).

26   ///

27   ///

28   ///

9

1   Other courts have found that a letter which "petitions, importunes, and entreats . . .

2   customers to call [the employee] at any time for information about the better policies [the

3   new company] can provide" amounts to solicitation. Id. at 1525 (quoting Am. Credit

4   Indem. Co. v. Sacks, 213 Cal. App. 3d 622, 636-37 (1989)). Thus, using trade secret

5   customer lists to solicit customers constitutes misappropriation. See id.

6        Importantly, "[m]isappropriation and misuse can rarely be proved by convincing

7   direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous

8   circumstantial evidence from which the trier of fact may draw inferences . . . that it is

9   more probable than not that [misappropriation] did in fact take place." Hanger

10   Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc., 556 F. Supp. 2d 1122, 1136

11   (E.D. Cal. 2008).

12        Farmers alleges that "Blalock's District Manager Appointment Agreement with

13   Farmers was terminated effective January 2012. Ted Blalock went on to work for the

14   Steele Insurance Agency. He has participated in and aided Steele and the other

15   Defendants in the wrongful acts described herein." FAC at 8. Furthermore, Farmers

16   alleges that "McCarren is working at the direction of Steele and Blalock in attempting to

17   transfer the insurance business of Farmers' policyholders from Farmers to other insurers

18   for the benefit of the Steele Insurance Agency, and its owner, agents and employees."

19   Id. at 9. Moreover, Farmers alleges that "Steele and the other Defendants have retained

20   and/or accessed Farmers' proprietary, confidential and trade secret information for their

21   benefit, to the detriment of Farmers, and in violation of the terms of the AAA, for the

22   benefit of Steele's competing business, and its owner, agents and employees." FAC at

23   13. Farmers further claims that Defendants "solicited, switched, and re-[wrote], or

24   assisted other Defendants in doing so, the insurance business of Farmers' policyholders,

25   previously serviced by McCarren, Finister and Bill Henton, Jr., when they were agents, to

26   Steele's competing agency." Id. Finally, Farmers alleges each Defendant was the agent

27   of each of the other Defendants in committing the alleged acts.

28   ///

10

1        Accepting as true that Blalock "retained and/or accessed Farmers' proprietary,

2   confidential and trade secret information . . . for the benefit of Steele's competing

3   business," FAC at 13, and construing this allegation in the light most favorable to

4   Farmers, Farmers alleges facts sufficient to show that Blalock "disclos[ed] or use[d]"

5   Farmers' trade secrets, as required by the UTSA, Cal. Civ. Code § 3426.1(b).

6   Furthermore, these allegations, taken together and viewed in the light most favorable to

7   Farmers, are sufficient to show that at the time of Blalock's use or disclosure, he "knew

8   or had reason to know that his . . . knowledge of the trade secret was . . . [d]erived from

9   or through a person who had utilized improper means to acquire it," or "[d]erived from or

10  through a person who owed a duty to [Farmers] to maintain its secrecy or limit its use

11  . . . ." Cal. Civ. Code § 3426.1(b).  Farmers has therefore successfully provided grounds

12  for their entitlement to relief against Blalock for trade secret misappropriation.

13  Accordingly, Blalock's motion to dismiss this claim is denied.

14       As to the Steele Insurance Agency and Steele ("the Steele Defendants"), Farmers

15  alleges "Defendants misappropriated farmers' trade secrets by, among other things,

16  retaining or utilizing Farmers' Confidential Policyholder Information for the purpose of

17  soliciting directing or advising Farmers' policyholders to switch their insurance business

18  away from Farmers and to Steele's competing business." FAC at 15.  The Steele

19  Defendants take issue with Farmers' allegations on the ground that they are the acts of

20  others, and not the acts of the Steele Defendants.  See Steele Mot. at 11; Steele Defs.'

21  Reply 3, Sept. 25, 2013, ECF No. 41.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1        However, this argument completely avoids the issue of agency and the clear

2  allegations that Defendants are acting in concert.  Farmers' allegations that various

3  Defendants left Farmers' employ, taking with them Farmers' protected trade secret client

4  lists, and that those individuals are currently "working at the direction of" the Steele

5  Defendants to use those lists to solicit Farmers' policyholders to switch their insurance

6  business to the Steele Insurance Agency, are more than sufficient to show that the

7  Steele Defendants used Farmers' trade secrets without Farmers' consent.  <u>See</u> Cal. Civ.

8  Code § 3426.1(b); <u>see also</u> <u>Reeves</u>, 33 Cal. 4th at 1155 ("A violation of the UTSA occurs

9  when an individual misappropriates a former employer's protected trade secret client list,

10  for example, by using the list to solicit clients or to otherwise attain an unfair competitive

11  advantage.").

12        Moreover, Farmers' allegations make clear that at the time the Steele Defendants

13  and their agents used these customer lists, any of the three circumstances set forth in

14  subsection (b)(2)(B) of the UTSA might apply.  That is, viewing the allegations in the light

15  most favorable to Farmers, the Steele Defendants "knew or had reason to know that

16  [their] knowledge of the trade secret[s] was" either: (1) "[d]erived from or through a

17  person who had utilized improper means to acquire it;" (2) "[a]cquired under

18  circumstances giving rise to a duty to maintain its secrecy or limits its use;" or

19  (3) "[d]erived from or through a person who owed a duty to the person seeking relief to

20  maintain its secrecy or limit its use . . . ."  Cal. Civ. Code § 3426.1(b)(2)(B)(i)-(iii); <u>see</u>

21  <u>also</u> <u>Reeves</u>, 33 Cal. 4th at 1155; <u>Perry</u>, 56 Cal. App. 4th at 1524.  This finding is based

22  not on the alleged attempts to switch Farmers' customers to the Steele Insurance

23  Agency, nor on the alleged entice Farmers agents to come work for the Steele Insurance

24  Agency.  Rather, this finding is based on the allegations that Defendants have taken

25  Farmers' trade secret customer lists and have been successful in their efforts to switch

26  Farmers' customers, as Farmers' has suffered "loss of profits, loss of premiums, and

27  loss of business" as a result of the alleged misappropriation.

28  ///

1   Accordingly, the Steele Defendants' Motion to Dismiss Farmers' claim for trade secret

2   misappropriation is DENIED.

3

4       **B.      CFAA**

5

6       Farmers contends Perkins and Defendant Henton violated the CFAA by

7   accessing Farmers' files and Farmers' agents' computers without permission.  The

8   CFAA imposes liability, in relevant part, on:  "Whoever . . . [i]ntentionally access a

9   computer without authorization or exceeds authorized access, and thereby obtains . . .

10  information from any protected computer . . . ."  18 U.S.C. § 1030(a)(2).  The CFAA also

11  imposes liability on anyone who "knowingly and with intent to defraud, accesses a

12  protected computer without authorization, or exceeds authorized access, and by means

13  of such conduct furthers the intended fraud and obtains anything of value, unless the

14  object of the fraud and the thing obtained consists only of the use of the computer and

15  the value of such use is not more than $5,000 in any 1-year period."  18 U.S.C.

16  § 1030(a)(4).

17      The CFAA provides a private right of action, stating:

18          Any person who suffers damage or loss by reason of a
            violation of this section may maintain a civil action against the
19          violator to obtain compensatory damages and injunctive relief
            or other equitable relief. A civil action for a violation of this
20          section may be brought only if the conduct involves 1 of the
            factors set forth in subclauses (I), (II), (III), (IV), or (V) of
21          subsection (c)(4)(A)(i). Damages for a violation involving only
            conduct described in subsection (c)(4)(A)(i)(I) are limited to
22          economic damages. No action may be brought under this
            subsection unless such action is begun within 2 years of the
23          date of the act complained of or the date of the discovery of
            the damage. . . ."
24

25  18 U.S.C. § 1030(g).

26  ///

27  ///

28  ///

Subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i) are as follows:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

> (III) physical injury to any person;

> (IV) a threat to public health or safety;

> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security

Id. § 1030(c)(4)(A)(i)(I)-(V).

Thus, a private plaintiff bringing a claim under the CFAA must prove that the defendant violated one of the provisions of § 1030(a)(1)-(7), and that the violation involved one of the factors listed in § 1030(c)(4)(A)(i)(I)-(V).  See id. § 1030(g).  In the present case, only one of these factors is relevant: Farmers must allege that their case involves "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  Id. § 1030(c)(4)(A)(i)(1).

Here, Farmers alleges that Defendant Henton and Perkins violated 18 U.S.C. §§ 1030(a)(4) and 1030(a)(2).  To successfully state a claim pursuant to 18 U.S.C. § 1030(g) based on a violation of § 1030(a)(2), Farmers must allege that Defendant Henton and Perkins: (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and (3) thereby obtained information (4) from any protected computer . . . , and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value."  LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1132 (9th Cir. 2009) (citations omitted).

///

///

///

14

1    To successfully bring an action under § 1030(g) based on a violation of § 1030(a)(4),

2    Farmers must show that Defendant Henton and Perkins: (1) accessed a "protected

3    computer," (2) without authorization or exceeding such authorization that was granted,

4    (3) "knowingly" and with "intent to defraud," and thereby (4) "further[ed] the intended

5    fraud and obtain[ed] anything of value," causing (5) a loss to one or more persons during

6    any one-year period aggregating at least $5,000 in value.  Id. at 1132 (citing 18 U.S.C. §

7    1030(a); P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC,

8    428 F.3d 504, 508 (3d Cir. 2005); Theofel v. Farey-Jones, 359 F.3d 1066, 1078 (9th Cir.

9    2004)).

10        Perkins and Defendant Henton challenge two elements of Farmers' CFAA claims.

11    They assert Farmers' CFAA claims fail to adequately plead that Perkins and Defendant

12    Henton accessed a computer "without authorization," and they contend that Farmers

13    fails to allege "loss" within the meaning of the statute.

14

15                    1.    Access Without Authorization/ Exceeding Authorized Access

16

17        An individual who is authorized to use a computer for certain purposes but goes

18    beyond those limitations has "exceed[ed] authorized access" within the meaning of the

19    CFAA.  Brekka, 581 F.3d at 1133.  By contrast, "a person who uses a computer 'without

20    authorization' has no rights, limited or otherwise, to access the computer in question."

21    Id.  Thus, the Brekka court found that "when an employer authorizes an employee to use

22    a company computer subject to certain limitations, the employee remains authorized to

23    use the computer even if the employee violates those limitations.  It is the employer's

24    decision to allow or to terminate an employee's authorization to access a computer that

25    determines whether the employee is with or 'without authorization.'"  Id.

26    ///

27    ///

28    ///

1    In the instant case, Perkins argues that while Farmers alleges she "did not have

2    permission" to access files on Finister's computer, Farmers "never alleges whose

3    permission was lacking."  Steele Mot. at 13.  Perkins also contends that "Finister is

4    alleged to have been a Farmers' agent[,] . . . Farmers' agents have authorized access to

5    the confidential information[,] [and] Finister as authorized agent had access to the

6    alleged confidential information."  Id. at 13-14.  Perkins then states that "there is no

7    allegation that Defendant[] Perkins . . . accessed Farmers' computers without

8    authorization."  Id. at 14.  Perkins contend that "the fact [Finister] delegated [his]

9    authority to Perkins . . . does not make the access unauthorized."  Id.

10    However, the Complaint contains no allegations that Finister gave Perkins

11    permission to access his computer files using his user name and password.  The First

12    Amended Complaint clearly states that Perkins "used [a Farmer's Agent's] user ID and

13    password combination to access files and information on Farmers' computer system

14    when she did not have permission to do so."  FAC at 11.  The Complaint's failure to

15    specifically state whose permission was lacking is insufficient to warrant dismissal of

16    Farmers' CFAA claims against Perkins.

17    On a motion to dismiss, the allegations are accepted as true and are construed in

18    the light most favorable to the nonmoving party.  Cahill, 80 F.3d 336, 337-38 (9th Cir.

19    1996).  Farmers' allegation, viewed in the light most favorable to Farmers, shows that

20    Perkins was "a person who . . . [had] no rights, limited or otherwise, to access the

21    computer in question."  See Brekka, 581 F.3d at 1133.  There are no allegations in the

22    operative Complaint suggesting otherwise.  Perkins' contention that Finister permitted

23    her to use his computer is a factual issue to be decided on a motion for summary

24    judgment; it is not within the purview of a motion to dismiss, where the Court must

25    accept as true the factual allegations contained in the complaint.  Farmers' allegations

26    regarding Perkins therefore meet the "without authorization" prong of both

27    §§ 1030(a)(2)(C) and (a)(4).

28    ///

1    Defendant Henton raises similar arguments with respect to Farmers' CFAA

2  claims, contending that his father, a Farmers agent, "delegated [his] authority" to access

3  the Farmers system.  Farmers alleges Defendant Henton "worked in his father's office,"

4  but was not a Farmers agent, and Defendant Henton gave his "wife and daughter

5  unauthorized access to Farmers' computer system apparently for the purpose of

6  accessing information regarding Farmers' policyholders."  FAC at 12.

7    The first issue is whether Defendant Henton "lacked authorization" to access

8  the computer in question.  Farmers again fails to make any allegations that Defendant

9  Henton did not have authorization to access the computer(s) at issue.  See FAC; Order

10  34, July 25, 2013, ECF No. 34 ("Nowhere do Plaintiffs allege that Defendant Henton was

11  not authorized to access the physical computer(s) in question.")  Thus, as before,

12  Farmers again fails to plead facts sufficient to show that Defendant Henton was a person

13  "without authorization."  See Brekka, 581 F.3d at 1133.

14    Accordingly, the next issue is whether Defendant Henton was a person who

15  "exceeded [his] authorized access" under the CFAA.  Farmers alleges that "Defendants

16  were not authorized to access the Agency Dashboard and eCMS," and that "Defendant[]

17  . . . Henton . . . intentionally and without authorization accessed, caused others to

18  access, and/or [has] utilized others' user ID and password combination to access the

19  Agency Dashboard or eCMS . . . ."  FAC at 16.

20    As before, Farmers' allegation that "Defendants were not authorized to access the

21  Agency Dashboard and eCMS," and that "Defendant[] . . . Henton . . . intentionally and

22  without authorization accessed, caused others to access, and/or [has] utilized others'

23  user ID and password combination to access the Agency Dashboard or eCMS," FAC at

24  16, are sufficient for the Court to find that Farmers has sufficiently alleged that Defendant

25  Henton "exceeded his authorized access" under the CFAA.  See Order at 34 ("Viewed in

26  the light most favorable to Plaintiffs, these allegations reveal that Defendant Henton

27  'violated . . . restrictions on access to information' . . . and therefore 'exceeded his

28  authorized access.'") (citing Nosal, 676 F.3d at 863-64).

1        Farmers' allegations as to Defendant Henton therefore meet the "without

2 authorization" prong of the CFAA analysis.

3

4           **2.**     **Loss**

5

6        Perkins and Defendant Henton also challenge the loss element of Farmers' CFAA

7 claims on the ground that "there is no claim of loss or damage that is compensable

8 under CFAA."  Steele Mot. at 14.  However, Farmers alleges:

9
> Perkins' and Henton's unauthorized intrusion into the Agency
10 > Dashboard or eCMS has caused Farmers a loss in excess of
> $5,000 within a one-year period.  This cost was incurred in
11 > discovering and confirming the identity of Perkins and Henton
> as having had unauthorized access to Farmers' computer
12 > system, and in discovering the method by which they
> accessed the protected information.

13 FAC at 17.

14        The CFAA defines "loss" as "any reasonable cost to any victim, including the cost

15 of responding to an offense, conducting a damage assessment, and restoring the data,

16 program, system, or information to its condition prior to the offense, and any revenue

17 lost, cost incurred, or other consequential damages incurred because of interruption of

18 service . . . ."  18 U.S.C. § 1030(e)(11).  "'Loss,' therefore, means two things: 'any

19 reasonable cost to the victim,' and lost revenue or other damages incurred as a result of

20 an interruption of service."  AtPac, Inc. v. Aptitude Solutions, 730 F. Supp. 2d 1174,

21 1184 (E.D. Cal. 2010).  The CFAA defines "damage" as "any impairment to the integrity

22 or availability of data, a program, a system, or information . . . ."  18 U.S.C. § 1030(e)(8).

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

To allege a loss under the CFAA, "plaintiffs must identify impairment of or damage to the computer system that was accessed without authorization."  AtPac, Inc., 730 F. Supp. 2d at 1184 (quoting Doyle v. Taylor, No. 09-158, 2010 WL 2163521, at *2 (E.D. Wash. May 24, 2010) (holding that where plaintiff alleged defendant accessed plaintiff's USB thumb drive and retrieved a sealed document, "[p]laintiff would have to show that the thumb drive itself was somehow damaged or impaired by Defendant's act of accessing the drive.")).  "Cognizable costs also include the costs associated with assessing a hacked system for damage [and] upgrading a system's defenses to prevent future unauthorized access."  Id. (citing Doyle, 2010 WL 2163521, at *3); see also SuccessFactors, Inc. v. Softscape, Inc., 544 F. Supp. 2d 975 (N.D. Cal. 2008) ("[W]here the offense involves unauthorized access and the use of protected information . . . the cost of discovering the identity of the offender or the method by which the offender accessed the protected information [is] part of the loss for purposes of the CFAA.").

While a number of courts have noted that "costs not related to computer impairment or computer damages are not compensable under the CFAA," SKF USA, Inc. v. Bjerkness, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) (citing numerous cases reaching same conclusion), "courts in the Ninth Circuit have recognized the general principle that 'costs associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses within the meaning of the state,'" Mintz, 906 F. Supp. 2d at 1029.

Here, Farmers' allegations do not "identify impairment of or damage to the computer system that was accessed without authorization."  Rather, Farmers' alleged costs are associated with investigating and trying to locate the perpetrator.  Several courts within the Ninth Circuit found loss allegations similar to these to be adequate to state a claim.  See SuccessFactors, 85 F. Supp. 2d 975 (N.D. Cal. 2008); Kimberlite Corp. v. Does, No. C08-2147 TEH, 2008 WL 2264485, at *1-2 (N.D. Cal. 2008).

///

///

1    For example, in <u>SuccessFactors</u> the court stated:

2            In cases like this, where the offense involves unauthorized
3            access and the use of protected information, the reasonable
             'cost of responding to [the] offense,' . . . will be different from
             such cost in a case where the primary concern is the damage
4            to the plaintiff's computer system itself. . . .   Where the
             offender has actually accessed protected information,
5            discovering who has that information and what information he
             or she has is essential to remedying the harm. In such cases
6            courts have considered the cost of discovering the identity of
             the offender or the method by which the offender accessed
7            the protected information to be part of the loss for purposes
             of the CFAA.
8
9    544 F. Supp. 2d at 981.

10           Other courts have distinguished <u>SuccessFactors</u> on the facts.  In <u>Mintz</u>, the

11   plaintiff offered evidence that after the plaintiff gave notice to the defendant that he

12   would leave the defendant's employment and would be employed elsewhere, the

13   defendant gained access to the plaintiff's email account and read the plaintiff's new

14   employment contract.  The plaintiff claimed that he met the CFAA's loss requirement by

15   incurring $27,796.25 in attorneys' fees.  906 F. Supp. 2d at 1029.

16           In ruling on a motion for summary judgment, the Central District discussed several

17   factors distinguishing <u>Mintz</u> from <u>SuccessFactors</u>.  First, the <u>Mintz</u> court stated that in

18   <u>SuccessFactors</u>, "the relevant 'harm' of the unauthorized access was that the plaintiff

19   had no clue whether the hacker might invade the website again or send additional spam

20   emails to the plaintiff's customers, [and thus]  . . . it was necessary for the plaintiff to

21   track down the perpetrator."  <u>Id.</u> at 1030.  However, in <u>Mintz</u>, the undisputed facts

22   showed that, "within days of the hacking incident, . . . it was pellucid that [the defendant]

23   was responsible for" hacking into the plaintiff's email and that the defendant had

24   accessed the plaintiff's new employment contract."  <u>Id.</u>  Thus, while <u>SuccessFactors</u>

25   required the victim to expend more than $5,000 to "investigat[e] the extent of the breach

26   and locating the perpetrator's IP address," in <u>Mintz</u>, "[a]ll [the p]laintiff needed to do to

27   secure his Gmail account—indeed, all he could do—was to change the password and

28   the back-up email address used to retrieve the password."  <u>Id.</u>

1   Thus, the <u>Mintz</u> court stated, "it defies common sense to believe that Plaintiff's

2   subsequent legal efforts to confirm Priority Sports' involvement were 'essential to

3   remedying the harm' of the unauthorized access." [4] <u>Id.</u> at 1030-31.

4        A later motion for summary judgment may reveal that the facts of this case more

5   closely resemble those of <u>Mintz</u> rather than <u>SuccessFactors</u>.  However, at this stage of

6   the proceedings, Farmers has alleged facts that, when viewed in the light most favorable

7   to Farmers, are sufficient to show that Farmers incurred at least $5000 in costs

8   associated with investigating the harm and the cause of the damage.

9        Accordingly, Farmers have successfully stated their CFAA claims against Perkins

10  Defendant Henton.  Defendant Henton and Perkins' motion to dismiss these claims is

11  therefore DENIED.

12

13       **C.    Civil Conspiracy**

14

15       Civil conspiracy "is not a cause of action but a legal doctrine that imposes liability

16  on persons who, although not actually committing a tort themselves, share with the

17  immediate tortfeasors a common plan or design in its perpetration." <u>Applied Equip.</u>

18  <u>Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503, 510 (1994) (citing <u>Wyatt v. Union</u>

19  <u>Mortgage Co.</u>, 24 Cal.3d 773, 784 (1979)); <u>see also</u> <u>Entm't Research Grp. Inc. v.</u>

20  <u>Genesis Creative Grp.</u>, Inc., 122 F.3d 1211, 1228 (9th Cir. 1997).  "Standing alone, a

21  conspiracy does no harm and engenders no tort liability.  It must be activated by the

22  commission of an actual tort." <u>Applied Equip. Corp.</u>, 7 Cal. 4th at 511.

23  ///

24  ///

25  ///

26  _____
        [4] Notably, the <u>Mintz</u> court also found that the plaintiff's legal fees were paid by his new employer,

27  who was not a "victim" of the defendant's alleged activity, and thus not a "loss" within the meaning of the
    CFAA.  906 F. Supp. 2d at 1029 (citing 18 U.S.C. § 1030(e)(11)) ("[A] 'loss' is defined as "any reasonably

28  cost <u>to any victim.</u>'") (emphasis in original).  Such is not the case here.

1    The elements of a civil conspiracy are: (1) the formation and operation of a

2    conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages

3    arising from the wrongful conduct.  Applied Equip., 7 Cal. 4th at 511; see also Doctors'

4    Co. v. Super. Ct., 49 Cal. 3d 39, 44 (1989).  Each member of the alleged conspiracy

5    must be legally capable of committing the underlying tort -- that is, each member must

6    owe a duty to the plaintiff that is recognized by law and must be potentially subject to

7    liability for breach of that duty -- and must intend the success of the purpose of the

8    conspiracy.  Applied Equip., 7 Cal.4th at 511.  In addition, all elements of the underlying

9    tort must be satisfied.  See id.  If the plaintiff fails to adequately plead the underlying

10   claim, the corresponding conspiracy claim must also fail.  Id.  In the present action,

11   Farmers alleges that "Defendants formed and operated a conspiracy to illegally

12   misappropriate and use Farmers' trade secret protected policyholder information for the

13   purpose of soliciting Farmers' customers away from Farmers and towards the Steele

14   Insurance Agency."  FAC at 18.

15   Contrary to Defendants' assertion, the UTSA does not preempt this claim.  Courts

16   applying California law have found that claims "based entirely on the same factual

17   allegations that form the basis of [the] trade secrets claim" are preempted.  Callaway

18   Golf Co. v. Dunlop Slazenger Grp. Ams., Inc., 318 F. Supp. 2d 216, 220 (D. Del. 2004)

19   (applying California law); see also Gabriel Techs. Corp. v. Qualcomm Inc.,

20   No. 08cv1992-MME(PQR), 2009 WL 3326631, at *11 (S.D. Cal. Sept. 3, 2009)

21   ("California courts have adopted a broad view of preemption in this area and have held

22   that common law claims that are based on the same nucleus of facts as a

23   misappropriation claim are preempted.").  "Preemption is not triggered where the facts in

24   an independent claim are similar to, but distinct from, those underlying the

25   misappropriation claim."  Gabriel Techs., 2009 WL 3326631, at *11.  Thus, "the

26   preemption inquiry for those causes of action not specifically exempted by [section]

27   3426.7(b) focuses on whether other claims are no more than a restatement of the same

28   operative facts supporting trade secret misappropriation.

1   If there is no material distinction between the wrongdoing alleged in a UTSA claim and

2   that alleged in a different claim, the USTA preempts the other claim." Id. (quoting

3   Convolve, Inc. v. Compaq Computer Corp., No. 00 CV 5141(GBD), 2006 WL 839022, at

4   *6 (S.D.N.Y. Mar 31, 2006) (applying California law)).

5        Farmers alleges additional facts, such as the agreement to steal trade secrets

6   and the formation of the conspiracy, that factually differentiate this claim from a

7   misappropriation claim, although the harm is the same.  Accordingly, Farmers'

8   conspiracy claim is not preempted by the UTSA.

9        However, Farmers nonetheless fails to state a claim for civil conspiracy upon

10  which relief can be granted.  Although Rule 9(b) no longer applies, as Farmers no longer

11  alleges that Defendants acted "fraudulently" in perpetrating the conspiracy, see FAC at

12  18-19, Farmers again states this claim in conclusory terms.

13       Farmers clearly alleges Defendants conspired to misappropriate Farmers' trade

14  secrets, but Farmers' allegations regarding the formation and operation of a conspiracy

15  are only that Defendants "formed and operated a conspiracy to illegally misappropriate

16  and use Farmers' trade secrets for the purpose of soliciting Farmers customers away

17  from Farmers and towards the Steele Insurance Agency."  FAC at 19.  Farmers does not

18  actually allege that Defendants engaged in these actions because there was a specific

19  agreement between Defendants.  Moreover, Farmers provides only vague details about

20  the conspiracies in which Defendants allegedly participated.

21       To successfully state a claim, Farmers "must more clearly allege specific action

22  on the part of each [D]efendant that corresponds to the elements of a conspiracy cause

23  of action.  Such amended allegations, however, must be made within the sections of the

24  complaint that contain [Farmers'] claims for the underlying torts."  AccuImage

25  Diagnostics, 260 F. Supp. 2d at 948 (citing Mox, Inc. v Woods, 202 Cal. 675, 677

26  (1927)).

27       Accordingly, the claim for civil conspiracy is dismissed with leave to amend to

28  all moving Defendants.

**CONCLUSION**

For the reasons set forth above, IT IS SO ORDERED that:

1. Blalock's Motion to Dismiss (ECF No. 37) is DENIED as to Farmer' second cause of action and GRANTED WITH LEAVE TO AMEND as to Farmers' fifth cause of action;

2. The Steele Insurance Agency, Steele, McCarren, Perkins, and Henton's Motion to Dismiss (ECF No. 38) is GRANTED IN PART and DENIED IN PART, as follows:

    A. DENIED as to Farmers' second cause of action;

    B. DENIED as to Farmers' third cause of action;

    C. DENIED as to Farmers' fourth cause of action;

    D. GRANTED WITH LEAVE TO AMEND as to Farmers' fifth cause of action.

3. Not later than thirty (30) days following the date this Memorandum and Order is electronically filed, Plaintiffs may (but are not required to) file an amended complaint.  If no amended complaint is filed within said thirty (30) day period, without further notice to the parties, the cause of action dismissed by virtue of this Memorandum and Order will be dismissed with prejudice.

IT IS SO ORDERED.

Dated:  November 13, 2013

_____

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT