Royal F. Oakes (080480), roakes@bargerwolen.com
Michael A. S. Newman (205299), mnewman@bargerwolen.com
James C. Castle (235551), jcastle@bargerwolen.com
BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
Los Angeles, California 90071
Telephone: (213) 680-2800
Facsimile: (213) 614-7399

Attorneys for Plaintiffs
Farmers Insurance Exchange, Truck Insurance
Exchange, Fire Insurance Exchange, Mid-
Century Insurance Company and Farmers New
World Life Insurance Company

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, an inter-insurance exchange; TRUCK INSURANCE EXCHANGE, an inter-insurance exchange; FIRE INSURANCE EXCHANGE, an inter-insurance exchange; MID-CENTURY INSURANCE COMPANY, a corporation; and FARMERS NEW WORLD LIFE INSURANCE COMPANY, a corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> STEELE INSURANCE AGENCY, INC., a California corporation; TROY STEELE, an individual; TED BLALOCK, an individual; LARRY MCCARREN, and individual; BILL HENTON, an individual; CINDY JO PERKINS, an individual; and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO.: 2:13-cv-00784-MCE-DAD <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> 1. **BREACH OF CONTRACT** <br> 2. **MISAPPROPRIATION OF TRADE SECRETS** <br> 3. **VIOLATION OF THE COMPUTER FRAUD ACT – 18 U.S.C. § 1030(a)(2)(C)** <br> 4. **VIOLATION OF THE COMPUTER FRAUD ACT – 18 U.S.C. § 1030(a)(4)** <br> 5. **CIVIL CONSPIRACY** |

Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company and Farmers New World Life Insurance Company (hereinafter collectively "Plaintiffs" or "Farmers") bring this Second Amended Complaint against Defendants Steele Insurance Agency, Inc., Troy Steele, Bill Henton, Ted Blalock, Larry McCarren, Cindy Jo Perkins and Does 1-50, and allege as follows:

## GENERAL ALLEGATIONS AND JURISDICTION

1.      Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange and Fire Insurance Exchange are inter-insurance exchanges organized and existing under the laws of the State of California, with their principal place of business in Los Angeles, California, and licensed to do business as insurers in California.

2.      Plaintiff Mid-Century Insurance Company is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California, and is licensed to do business as an insurer in California.

3.      Plaintiff Farmers New World Life Insurance Company is a corporation duly organized under the laws of the State of Washington, with its principal place of business in Mercer Island, Washington, and licensed to do business as an insurer in California.

4.      Farmers is informed and believes, and on that basis alleges, that Defendant Steele Insurance Agency, Inc. ("Steele Insurance Agency") is a California Corporation, which has as its primary officer and shareholder Defendant Troy Steele.

5.      Farmers is informed and believes, and on that basis alleges, that Defendant Troy Steele ("Steele") is a resident of the County of Solano, California.

6.      Farmers is informed and believes, and on that basis alleges, that Defendant Bill Henton ("Defendant Henton") is a resident of the County of San Joaquin, California.[1]

7.      Farmers is informed and believes, and on that basis alleges, that Defendant Larry McCarren ("McCarren") is a resident of the County of San Joaquin, California.

8.      Farmers is informed and believes, and on that basis alleges, that Defendant Cindy Jo Perkins ("Perkins") is a resident of the County of San Joaquin, California.

9.      Farmers is informed and believes, and on that basis alleges, that Defendant Ted Blalock ("Blalock") is a resident of the County of San Joaquin, California.

10.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 50, inclusive, are unknown to Farmers. Farmers sues Does 1 through 50 by such fictitious names.  Farmers will amend this complaint to show such true names and capacities if they become known and necessary.

11.     Farmers is informed and believes, and on that basis alleges, each defendant was the agent and/or employee of each of the remaining defendants; and in doing the things alleged, each was acting within the scope of his, her or its authority as such agent and/or employee and with the permission and consent of the other defendants, and each of them.

12.     Jurisdiction is proper in this Court pursuant to 28 U.S.C sections 1331 and 1441(b), in that this case arises under the laws of the United States, namely 18 U.S.C. § 1030.

---

[1] For clarification, Defendant Henton is the son of Bill Henton, Jr., who was formerly a Farmers agent.  Bill Henton, Jr., the former agent, is not a defendant in this action.

# FACTUAL ALLEGATIONS

13.     Farmers is in the business of selling insurance policies, including automobile, homeowner's, commercial and life insurance, to customers through independent contractor agents who, in turn, are recruited, trained and supported by independent contractor District Managers.  The markets for these types of insurance are highly competitive.  In the course of conducting its business, Farmers has invested substantial time and money to develop and build its goodwill, image and relationship with its policyholders and the public.

14.     Farmers' most valuable assets are its relationships with its customers (*i.e.,* policyholders) and their customer information (including premiums amounts, type of insurance, dates of policy expirations and related data), which, if made known to competitors, would give them a significant competitive advantage against Farmers. Farmers has made significant investments in building its business, and customer relationships through its agency force, which it supports with training, customer service, advertising, promotion and other initiatives.  Farmers agents are exclusive agents for its insurance products.  The agents may not promote or sell insurance policies issued by other insurers, with respect to eligible and acceptable risks for all classes and lines of insurance underwritten by Farmers.

15.     Farmers has made and continues to make a significant investment of time, labor, and capital to develop, maintain and update its proprietary database of trade secret pricing, expirations and other customer information.  Farmers' trade secret customer data is much more detailed and extensive than just the names of and contact information for Farmers' customers or potential customers.  It includes information relating to those customers' insurance requirements, such as the type of insurance the customer needs, the type of cars owned, the details of their homes and other insured properties, their eligibility for discounts, and the dates their insurance policies expire.  It includes information on past claims history. It includes social security numbers and other private information about customers, such as their

employment and financial condition. Although certain limited contact information might be publicly available for some of Farmers' insureds or potential customers - such as published home telephone numbers - the overwhelming majority of the information referenced above is not publicly available, but rather Farmers' compilation of such information is available only to Farmers' exclusive insurance agents and a limited number of Farmers' employees through Farmers' proprietary database. For example, there are no publicly available lists of Farmers' insureds.

16.     Farmers derives substantial economic value from preserving this customer information, including policy expiration information, as a trade secret. A business priority is securing the annual or semi-annual policy renewals from, along with any new policies needed by, the roster of Farmers' current insureds. A high retention rate is essential to Farmers' long-term financial health and growth.  Farmers makes every effort to renew policies and a very high percentage of its policyholders routinely and consistently renew their policies with Farmers each year.

17.     Much of Farmers' success results from the proprietary resources/applications available on its secure website for agents (known as the "Agency Dashboard"). The Agency Dashboard is a password-protected Internet portal to designated computer servers that allows Farmers' insurance agents, District Managers and employees to track information about and provide services to its policyholders better than those of its competitors.  The Agency Dashboard gives agents access to integral and highly proprietary information, including underwriting practices, guidelines, communications, training information and rating systems.  This information is Farmers' proprietary and confidential information, and has independent economic value.  It gives Farmers commercial advantages that would be lost if it were known to its competitors.

18.     The Agency Dashboard also allows agents access to numerous databases, including the Electronic Customer Marketing System ("eCMS"), which contains information regarding prospective, current and former policyholders.  The

policyholder information available on eCMS includes names, addresses, telephone numbers, social security numbers, driver's license numbers, policy expiration dates, details of the insureds' property, claims history, financial and other information ("Confidential Policyholder Information").  The Confidential Policyholder Information is in fact confidential information, not generally available in the industry or to Farmers' competitors, of substantial economic advantage to Farmers and, if available to its competitors, would be of great economic value to them.  Competitors can far more easily solicit Farmers' insureds to change insurance providers when those competitors can unfairly access Farmers' trade secret information without having made the investment of time, labor, and capital that Farmers and its exclusive agency force made to compile and update the information.

19.    eCMS is a key tool used by authorized insurance agents and District Managers to service Farmers policyholders.  Using secure access control mechanisms, eCMS provides authorized agents with the ability to access Confidential Policyholder Information and to create various policyholder reports, contact lists, mailing labels, and other information reports.  These reports, lists and labels are used for marketing, servicing, and managing the agency.  eCMS also provides the ability to recreate historical records about information added into the policyholder's account.

20.    Farmers invested significant time, labor and capital to develop eCMS. On an ongoing basis, Farmers invests significant resources in updating, maintaining, and securing its eCMS proprietary database.

21.    Farmers engages in reasonable measures to preserve its trade secret Confidential Policyholder Information by preventing the information from reaching competitors or any outside third-party.  Farmers maintains its customer information, including policy expirations, on a password and user-ID protected system.  Farmers protects its trade secret customer information by requiring each employee or agent or District Manager who will access the data to agree to use Farmers' trade secret customer information only in the course of their relationship with Farmers, and

promise not to divulge Farmers' trade secret customer information to third parties or to use it in any way detrimental to Farmers.  Farmers also protects its customer information by issuing company policies regarding access to and preservation of confidential customer information, and by maintaining copies of those policies on the Agency Dashboard.  Each time agents access Farmers' proprietary system through the Agency Dashboard they agree to abide by an additional and separate "Legal Disclaimer" reflecting that the information they are accessing is Farmers' proprietary, confidential and trade secret information.  Farmers also periodically reminds agents of their confidentiality policies via bulletins and other communications.  At the time of termination of an agent's Agent Appointment Agreement, the access of that agent and their staff to eCMS (and the Agency Dashboard) is turned off and their password and user-ID combinations are no longer valid.

## UNDERLYING FACTS

22.     Steele was appointed a District Manager with Farmers in 2001, pursuant to a District Manager Appointment Agreement (DMAA).

23.     Blalock was also appointed a District Manager with Farmers.

24.     McCarren was appointed an Agent with Farmers on January 16, 1992, pursuant to an Agency Appointment Agreement ("AAA").  A true and correct copy of McCarren's AAA is attached as **Exhibit A** and incorporated by reference.

25.     The DMAA of Steele was terminated by Farmers, pursuant to the terms of the DMAA, effective in January 2010.  The DMAA of Blalock was terminated by Farmers, pursuant to the terms of the DMAA, effective in January 2012.  McCarren terminated his AAA in August 2012, effective November 3, 2012.

26.     After his DMAA was terminated, Steele started his own insurance agency – the Steele Insurance Agency, Inc.  Steele and the Steele Insurance Agency, Inc. were not appointed or allowed to sell Farmers insurance products.  All of the acts of Steele alleged herein that form the basis of the causes of action in this complaint, were performed by Steele both in his individual capacity, and in his capacity as the

primary officer and/or shareholder of the Steele Insurance Agency, Inc. and therefore were acts of Steele as an individual and the acts of the Steele Insurance Agency, Inc.

27.     In connection with running his new competing insurance agency, Farmers is informed and believes that Steele is using improper means to obtain access to Farmers' policyholder information.  On information and belief, one of Steele's primary methods of expanding his business is to aggressively solicit Farmers agents and agents' customer service representatives to leave Farmers to come work for Steele and Farmers' competitors.  By virtue of his experience as a Farmers District Manager, and because of the many former Farmers agents Steele has working for him, Steele is well aware of the contractual restrictions placed on Farmers agents after they terminate their agencies, in particular the obligation under the AAA to refrain from using or divulging Farmers' policyholder information in any way detrimental to Farmers.  One example of this method in action comes from the attempted solicitation of Farmers customer service representative Roxanna Castro (*see* paragraph 36, *infra*), who was specifically told that she would be welcome as a member of the Steele Insurance Agency if she took the contact and renewal information regarding 100 of the Farmers customers serviced by the Farmers agent she worked with and came to work for Steele.

28.     What follows are some examples of the wrongful acts of Steele, but Farmers is informed and believes that there are more such actions, which discovery will uncover:

**Larry McCarren**

29.     McCarren was an agent for Farmers who, until January 2012, worked within the District of District Manager Ted Blalock.  As discussed above, Ted Blalock's District Manager Appointment Agreement with Farmers was terminated effective January 2012.  Ted Blalock went on to work for the Steele Insurance Agency.  He has participated in and aided Steele and the other Defendants in the wrongful acts described herein.

30.     Farmers alleges that while McCarren was still an agent for Farmers, he was writing policies for other insurers, in violation of his AAA.  McCarren terminated his AAA in August 2012, effective November 3, 2012.  It is believed that McCarren is now also working at the Steele Insurance Agency.

31.     Since McCarren tendered his resignation, Farmers has received complaints from several customers who said they have been contacted by McCarren in an attempt to switch their insurance business to other carriers.

32.     McCarren also accessed Farmers' computer system to download the information regarding the entire customer list of customers he serviced while a Farmers agent, which is a violation of the terms of the AAA.  McCarren has admitted to Farmers' personnel that he had downloaded customer information on Farmers' customers he serviced prior to leaving so that he could use such information after termination of the AAA.

33.     Upon information and belief, McCarren is working at the direction of Steele and Blalock in attempting to transfer the insurance business of Farmers' policyholders from Farmers to other insurers for the benefit of the Steele Insurance Agency, and its owner, agents and employees.

**The Solicitation Of Ruth Epperson**

34.     Ruth Epperson provides one example of McCarren's switching of Farmers' policyholders, and shows that he began such activities before he even ceased to be a Farmers agent.  In late July, 2012, days before giving notice of his intent to terminate his relationship with Farmers, Defendant Larry McCarren contacted Farmers customer Ruth Epperson, and enticed her into switching away from Farmers.  For many years, up until mid-2012, Mrs. Epperson was a customer of Farmers Insurance and had Farmers home and automobile insurance policies.  In the summer of 2012, her agent was Larry McCarren.  On July 25, 2012, Mr. McCarren contacted her, asking for an appointment to discuss her insurance.  McCarren visited Mrs. Epperson at her home, and told her he was leaving Farmers, and that he wanted

to set her up with another insurance company.  He said he wanted her to switch to Allied Insurance.  This was his idea, not Mrs. Epperson's, as she had no interest in switching.  McCarren told her that if she switched, the cost of her insurance would likely go down.  As a result of Mr. McCarren's requests, Mrs. Epperson did move her insurance to Allied Insurance for a while, but was dissatisfied.  Ultimately, on her own initiative, she moved her coverage to Liberty Mutual.  She no longer has any Farmers policies.

35.     As this evidence shows, McCarren did not merely download the entire list of Farmers customers whom he serviced so that he could solicit them after he left, as bad as that is.  He in fact began the solicitation of Farmers customers before he left Farmers, indeed before he even announced he was leaving.   This evidence also shows how damaging such solicitation is to Farmers; even after Mr. McCarren's predictions of savings proved disappointing, Mrs. Epperson moved to a third carrier, and her business has been lost to Farmers.  As she declared, she had no intention of leaving Farmers until McCarren solicited her.   In the competitive insurance market, the ease with which customers can be switched (provided their insurance, renewal, and contact information is known) shows how necessary it is that trade secrets, such as Farmers', be protected.

**Blalock's and Steele's Attempted Solicitation of Farmers Customer Service Representative Roxanna Castro**

36.     Until May 2012, Roxanna Castro worked as a customer services representative at the office of Farmers agent Charlie Finister.  Charlie Finister's office was in the same building as, and a floor below, the offices of Ted Blalock, the former Farmers District Manager who now works at the Steele Insurance Agency.  Castro believes that Troy Steele also physically works out of the same office.  In May 2012, Charlie Finister, who died later that year of diabetes, told Castro that he would be retiring soon.  This made Castro concerned about her job security, and she decided to

leave Finister's agency.  She spoke to Ted Blalock, who told her she could come and work for the Steele Insurance Agency provided she obtain the contact and renewal information regarding 100 of the Farmers customers Charlie serviced, and bring them with her to the Steele Insurance Agency.  Ted Blalock told her she could make a lot of money doing this.  But this blatant invitation to steal Farmers' confidential policyholder information did not seem right to her, and she refused. On information and belief, Blalock made this invitation at the behest of, and with the approval of, Steele.

**Cindy Jo Perkins**

37.     Sometime in spring of 2012, McCarren's longtime employee, Cindy Jo Perkins, went to work for Charlie Finister.    Throughout the year 2012, Finister was gravely ill with diabetes.  Finister went into hospice in October 2012.  He died in November 2012.

38.     Perkins used Finister's user ID and password combination to access files and information on Farmers' computer system when she did not have permission to do so.  Perkins is an appointed agent with the Steele Insurance Agency and was so when she was improperly accessing Farmers' computer system.

39.     Upon information and belief, Perkins is working together with and at the direction of Steele and Blalock in attempting to transfer the insurance business of Farmers' policyholders from Farmers to other insurers for the benefit of the Steele Insurance Agency, and its owner, agents and employees.

**The Attempted Solicitation Of Steven Salentine**

40.     One example of the solicitation of Farmers customers by Perkins is the case of Steven Salentine.  For many years, Steven Salentine and his wife had automobile and homeowner's insurance policies with Farmers, with his policies being serviced by Finister.  In November 2012, Salentine called Mr. Finister's office and Cindy Jo Perkins answered the phone and told him that Mr. Finister had died.

Approximately one month later, in early December 2012, Salentine received a letter from Ms. Perkins, asking him to move his insurance business away from Farmers. The letter listed several insurance companies Ms. Perkins was working with, none of which was Farmers, and urged him to move his business to one of those companies. Shortly after he received the letter, Ms. Perkins called him by telephone, again asking him to change his insurance. He told her that he objected to her use of his personal information to solicit him.

**Bill Henton**

41.    Bill Henton, Jr. was an agent for Farmers since 1968.  In 2012, it became clear to his District Manager, Rudy Cedre, that he had severe memory problems.

42.    Bill Henton, Jr.'s son, also named Bill ("Defendant Henton"), worked in his father's office.  However, Defendant Henton was not appointed as an agent with Farmers.  Bill Henton, Jr. and his district manager discussed the possibility of Defendant Henton becoming appointed as a Farmers agent, but Defendant Henton never took the steps necessary to become one.

43.    In November 2012, Bill Henton, Jr. resigned as a Farmers agent. Farmers has since learned that Defendant Henton, taking advantage of his father's vulnerable state before such resignation became effective, gave Defendant Henton's wife and daughter unauthorized access to Farmers' computer system apparently for the purpose of accessing information regarding Farmers' policyholders.  Farmers has also learned that Defendant Henton is becoming or has become part of the Steele Insurance Agency.  Defendant Henton remains in control of the physical files relating to over 1600 of Farmers policies, and will not allow Farmers access to such files. Defendant Henton has also made arrangements to have all mail directed to his father's Farmers office forwarded directly to Defendant Henton's new office address.

44.    Upon information and belief, Defendant Henton is working together with and at the direction of Steele and Blalock in attempting to transfer the insurance business of Farmers' policyholders from Farmers to other insurers for the benefit of

the Steele Insurance Agency, and its owner, agents and employees.

45.     In this way, Steele and the other Defendants have retained and/or accessed Farmers' proprietary, confidential and trade secret information for their benefit, to the detriment of Farmers, and in violation of the terms of the AAA, for the benefit of Steele's competing business, and its owner, agents and employees. Farmers further alleges that Defendants have solicited, switched, and re-written, or assisted other Defendants in doing so, the insurance business of Farmers' policyholders, previously serviced by McCarren, Finister and Bill Henton, Jr. when they were  agents, to Steele's competing agency.

46.     Unless Defendants are enjoined from misappropriating and improperly using Farmers' confidential, proprietary and trade secret information, Farmers will suffer substantial and irreparable harm by loss of goodwill, loss of policyholders, and present and future economic losses.

47.     Farmers has no adequate remedy at law for Defendants' continuing conduct and damages are an insufficient remedy for the harm Farmers faces.

### FIRST CAUSE OF ACTION
### (Breach Of Contract As Against McCarren)

48.     Farmers realleges and incorporates by reference the allegations contained in paragraphs 1 through 47.

49.     The AAA constituted a contract between Farmers and McCarren.

50.     Farmers has performed all conditions and covenants required under the AAA, except as excused by the conduct of McCarren.

51.     McCarren materially breached the AAA and continues to breach his continuing contractual obligations by engaging in the following conduct: (a) soliciting business from Farmers' present and former policyholders; (b) switching or rewriting business from Farmers to other insurance carriers and servicing such

insurance coverage after it was switched away from Farmers; (c) using Farmers' confidential business information he acquired while serving as a Farmers agent to the detriment of Farmers; and (d) using Farmers' confidential business information he acquired and/or retained.

52.     As a direct and proximate result of McCarren's breach, Farmers has suffered and will continue to suffer loss of profits, loss of premiums, and loss of business all to Farmers' damage in an amount presently undetermined and to be proven at trial, but within the jurisdiction of this court and in excess of this court's jurisdiction for a limited liability case.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets Against All Defendants Pursuant To The Uniform Trade Secrets Act)

53.     Farmers realleges and incorporates by reference the allegations contained in paragraphs 1 through 52.

54.     Steele aggressively solicits Farmers agents and agents' customer service representatives to leave Farmers to come work for Steele and Farmers' competitors. By virtue of his experience as a Farmers District Manager, and because of the many former Farmers agents Steele has working for him, Steele is well aware of the contractual restrictions placed on Farmers agents after they terminate their agencies, in particular the obligation under the AAA to refrain from using or divulging Farmers' policyholder information in any way detrimental to Farmers. Indeed, Defendants are all well aware that the Confidential Policyholder Information of Farmers are trade secrets, protected under California's Uniform Trade Secrets Act, Cal. Civ. Code, § 3426 et sq.

55.     Confidential Policyholder Information of Farmers includes information contained in Farmers' policyholder records and proprietary database (including but not limited to applications, policies, endorsements, riders, expirations and claims

information), customer lists, financial records and computer data and resources. Confidential Policyholder Information constitutes trade secret information because it derives independent economic value from being generally unknown to the public, or Farmers' actual or potential competitors and others who can obtain economic value from its disclosure or use.

56.     The Confidential Policyholder Information is, and at all relevant times has been, the subject of Farmers' reasonable efforts under the circumstances to maintain its secrecy.

57.     Farmers has taken measures to prevent the unauthorized disclosure or use of its Confidential Policyholder Information.

58.     Defendants' actions constitute misappropriation of trade secrets in violation of Civil Code sections 3426.1 and 3426.2.  Defendants knew or had reason to know Farmers' trade secrets were acquired or accomplished under circumstances that gave rise to a duty to maintain the secrecy of the Confidential Policyholder Information and to return the Confidential Policyholder Information to Farmers on termination of an agency relationship.  Moreover, every time Defendants accessed the Agency Dashboard during their tenure with Farmers, they were required to acknowledge and agree the information in the Agency Dashboard was confidential and not to be used to Farmers' detriment.  Defendants were well aware of the numerous policies Farmers has about the nature and protection of its confidential, proprietary policyholder information.

59.     Defendants misappropriated Farmers' trade secrets by, among other things, retaining or utilizing Farmers' Confidential Policyholder Information for the purpose of soliciting, directing or advising Farmers' policyholders to switch their insurance business away from Farmers and to Steele's competing business.

60.     Unless Defendants' misappropriation and use of Farmers' Confidential Policyholder Information is restrained by court order, Farmers will continue to suffer

irreparable harm from Defendants' wrongful possession, use and disclosure of Farmers' Confidential Policyholder Information.

61.     Defendants' misappropriation of Farmers' trade secrets should be enjoined pursuant to Civil Code section 3426.2, subdivision (a) and (c).

62.     As a direct and proximate result of Defendants' misappropriation of Farmers' trade secrets, Farmers has suffered and will continue to suffer loss of profits, loss of premiums, and loss of business, all to its damage in an amount in excess of this court's jurisdictional limit, subject to proof at the time of trial. Furthermore, Defendants have been unjustly enriched by their misappropriation and use of Farmers' Confidential Policyholder Information.

63.     Defendants' conduct was done and continues to be done wilfully and maliciously. Farmers is therefore entitled to exemplary damages pursuant to Civil Code section 3426.3, subdivision (c), and reasonable attorneys' fees pursuant to Civil Code section 3426.4.

## THIRD CAUSE OF ACTION

### (Violation of the Computer Fraud Act, 18 U.S.C. § 1030(a)(2)(C) Against Defendants Perkins and Henton)

64.     Farmers realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 63.

65.     The Agency Dashboard and eCMS contained therein constitute "protected computers" as defined in the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2)(B).

66.     At all times relevant to this Complaint, Defendants were not authorized to access the Agency Dashboard and eCMS.

67.     Defendants Perkins and Henton have intentionally and without authorization accessed, caused others to access, and/or have utilized others' user ID and password combination to access the Agency Dashboard or eCMS and obtain

Confidential Policyholder Information and other information residing in the Agency

Dashboard or eCMS, requiring Farmers to respond to such acts.

68.     Perkins' and Henton's conduct violates 18 U.S.C. § 1030(a)(2)(C).

69.     This action is authorized by 18 U.S.C. § 1030(g), which provides that any "person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).  A civil action may be brought if the conduct involves a loss during any one-year period aggregating at least $5,000 in value or a threat to public health or safety. 18 U.S.C. §§ 1030(g), 1030(a)(2)(C), 1030(c)(4)(A)(i)(I).

70.     Perkins' and Henton's unauthorized intrusion into the Agency Dashboard or eCMS has caused Farmers a loss in excess of $5,000 within a one-year period.  This cost was incurred in discovering and confirming the identity of Perkins and Henton as having had unauthorized access to Farmers' computer system, and in discovering the method by which they accessed the protected information.

## FOURTH CAUSE OF ACTION

## (Violation of the Computer Fraud Act, 18 U.S.C. § 1030(a)(4) Against Defendants Perkins and Henton)

71.     Farmers realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 70.

72.     Defendants Perkins' and Henton's access to and use of the Agency Dashboard or eCMS was with knowledge and intent to defraud and unfairly compete against Farmers by misappropriating Confidential Policyholder Information and insurance business.

73.     Defendants Perkins and Henton used Confidential Policyholder Information they unlawfully obtained from the Agency Dashboard or eCMS to obtain

the business of certain of policyholders, causing the loss and harm described herein and which will be proved at trial.

74.     Perkins' and Henton's actions constitute violations of 18 U.S.C. § 1030(a)(4), in that Defendants, "knowingly and with intent to defraud, access[ed] a protected computer without authorization . . . , and by means of such conduct further[ed] the intended fraud and obtain[ed] [something] of value . . . ." 18 U.S.C. § 1030(a)(4).

75.     This action is authorized by 18 U.S.C. § 1030(g), which provides that any "person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).  A civil action may be brought if the conduct involves a loss during any one-year period aggregating at least $5,000 in value or a threat to public health or safety. 18 U.S.C. §§ 1030(g), 1030(a)(2)(C), 1030(c)(4)(A)(i)(I).

76.     Perkins' and Henton's unauthorized intrusion into the Agency Dashboard or eCMS has caused Farmers a loss in excess of $5,000 within a one-year period.  This cost was incurred in discovering and confirming the identity of Perkins and Henton as having had unauthorized access to Farmers' computer system, and in discovering the method by which they accessed the protected information.

## FIFTH CAUSE OF ACTION
### (Civil Conspiracy Against All Defendants)

77.     Farmers realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 76.

78.     As described herein, Defendants formed and operated a conspiracy to illegally misappropriate and use Farmers' trade secret protected policyholder information for the purpose of soliciting Farmers customers away from Farmers and towards the Steele Insurance Agency.   In particular, Defendants had a specific

agreement amongst themselves to illegally misappropriate and use Farmers' trade secret protected policyholder information for the purpose of soliciting Farmers' customers away from Farmers and towards the Steele Insurance Agency.

79.    Defendants engaged in wrongful conduct in furtherance of the conspiracy, including but not limited to misappropriation and use of electronic and paper copies of Farmers' trade secret protected policyholder information and through the unauthorized use and access Farmers' proprietary computer system.

- Defendants Blalock, Steele and the Steele Insurance Agency were the ring-leaders of this conspiracy, formulating the goals and methods of the scheme, and enticing and recruiting others to take part in it.  In this manner, they recruited and enticed defendants McCarren, Perkins and Henton – and sought to entice Ms. Castro – to take actions in furtherance of the conspiracy [see Paragraphs 26-44 herein].

- Defendant Larry McCarren acted in coordination with and pursuant to the direction of Blalock, Steele and the Steele Insurance Agency, engaging in the theft and misappropriation of Farmers' Confidential Policyholder Information and the solicitation of customers in furtherance of the conspiracy.  Among other things, he downloaded the Confidential Customer Information regarding all of the Farmers customers whom he had serviced and then solicited them to change to products offered by the Steele Insurance Agency, for example, as in the case of Ruth Epperson [see Paragraphs 29-35 herein];

- Defendant Cindy Jo Perkins acted in coordination with and pursuant to the direction of Blalock, Steele and the Steele Insurance Agency, engaging in the theft and misappropriation of Farmers Confidential Policyholder Information and the solicitation of customers in furtherance of the conspiracy. Among other things, Cindy Jo Perkins downloaded the Confidential Customer Information for the Farmers customers serviced by

Charlie Finister, and then utilized that list in order to solicit customers, as she did in the case with Steven Salentine [see Paragraphs 37-40 herein];

- Defendant Bill Henton acted in coordination with and pursuant to the direction of Blalock, Steele and the Steele Insurance Agency, engaging in the theft and misappropriation of Farmers' Confidential Policyholder Information and the solicitation of customers in furtherance of the conspiracy – for example, in his failure to return the 1600 Farmers policy files (which were required to be returned to Farmers at the time of the termination of his father's AAA) and utilization of them to solicit such customers [see Paragraphs 41-44 herein];

80.     Defendants all had knowledge of the unlawful objectives of the conspiracy and an intent to achieve these objectives, as is evidenced by the affirmative action they took to bring this conspiracy to fruition [see Paragraph 79], including but not limited to misappropriation and use of Farmers' trade secret protected policyholder information and the unauthorized use and access Farmers' proprietary computer system, as described herein.

81.     The conspiracy was successful in that it resulted in the switching of numerous policyholders away from Farmers and towards the Steele Insurance Agency.  As a direct and proximate result of the conspiracy, Farmers has suffered and will continue to suffer loss of profits, loss of premiums and loss of business, all to Farmers' detriment in an amount in excess of this Court's jurisdictional limits, subject to proof at the time of trial.  In perpetrating the above stated acts, Defendants acted wilfully and maliciously, and in blatant disregard of Farmers' rights. To deter such conduct in the future and to set an example, Farmers prays for exemplary and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Farmers prays for judgment as follows:

1.    For damages according to proof at the time of trial on this matter.

2.    For statutory damages, including but not limited to treble damages.

3.    For punitive and/or exemplary damages, pursuant to Civil Code section 3426.3, subdivision (c).

4.    That this Court shall issue an order that Farmers is excused from its performance under the AAA after McCarren's material breach and thus that McCarren shall forfeit and return any compensation paid to him by Farmers after his breach of contract, and shall forfeit any compensation to be paid to him by Farmers under the AAA, including but not limited to commissions, Contract Value, and any bonuses.

5.    That this Court issue a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants, their attorneys, representatives, associates, agents, servants, and employees, and all persons acting in concert and participation with them from directly or indirectly:

(a) Accessing, utilizing, divulging, or making use in any manner Farmers' Confidential Policyholder Information;

(b) Duplicating, copying, condensing, or summarizing Confidential Policyholder Information obtained from Farmers' computer databases;

(c) Duplicating, copying, condensing, or summarizing information obtained from Farmers' computer databases that pertains to policyholder expirations or other policyholder information;

(d) Disseminating, transferring, publishing, or communicating to any other person, including competing insurance carriers, Farmers' Confidential Policyholder Information;

(e) For a period of one year, directly or indirectly soliciting, accepting, or servicing the insurance business of any policyholder previously serviced by McCarren when he was a Farmers agent; and

1         (f) Cancelling or non-renewing the policies of Farmers' policyholders

2 without their knowledge or consent.

3         (g) Retaining possession of physical and electronic files relating to

4 Farmers' policyholders, and of receiving and/or retaining mail from current Farmers

5 customers pursuant to instructions to the post office to forward mail directed to prior

6 Farmers agents.

7       6.    That this Court provide injunctive relief as follows:

8         (a) Compelling Defendants, their representatives, associates, agents,

9 servants, and employees, and all persons acting in concert and participation with

10 them, to allow Farmers reasonable access to each and every computer and other

11 device, including all off-site internet data storage (for example, information stored on

12 the "cloud"), capable of storing electronic information in their possession, custody

13 and control wherever located, to determine if it contains any Confidential

14 Policyholder Information, and if so, to be permanently deleted from the memory of

15 these computers; and

16         (b) Compelling Defendants, their representatives, associates, agents,

17 servants, and employees, and all persons acting in concert and participation with

18 them, to transfer or surrender to Farmers all paper copies of Confidential

19 Policyholder Information.

20       7.    For costs of suit incurred herein.

21       8.    For reasonable attorneys' fees pursuant to Civil Code section 3426.4.

22       9.    For such other and further relief as this Court deems proper.

23

24

25

26

27

28

Dated:  December 16, 2013

BARGER & WOLEN LLP


By:  /s/Royal F. Oakes
ROYAL F. OAKES
MICHAEL A.S. NEWMAN
JAMES C. CASTLE
Attorneys for Plaintiffs Farmers
Insurance Exchange, Truck Insurance
Exchange, Fire Insurance Exchange,
Mid-Century Insurance Company and
Farmers New World Life Insurance
Company

BARGER & WOLEN LLP
633 W. FIFTH ST.
FORTY-SEVENTH FLOOR
LOS ANGELES, CA 90071
(213) 680-2800