1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   FARMERS INSURANCE EXCHANGE,         No.  2:13-cv-00784-MCE-DAD
     et al.,
12
                          Plaintiffs,
13                                        **MEMORANDUM AND ORDER**
             v.
14
     STEELE INSURANCE AGENCY, INC.,
15   et al.,

16                          Defendants.

17   _____

18   AND RELATED CROSS-ACTION

19

20          Plaintiffs Farmers Insurance Exchange, Truck Insurance Exchange, Fire

21   Insurance Exchange, Mid-Century Insurance Company, and Farmers New World Life

22   Insurance Company (collectively "Cross-Defendants" or "Farmers") filed this action

23   against Defendants Steele Insurance Agency ("SIA"), Troy Steele ("Steele"), Ted Blalock

24   ("Blalock"), Larry McCarren ("McCarren"), Bill Henton ("Henton"), and Cindy Jo Perkins

25   ("Perkins") (collectively "Defendants") for the alleged misappropriation of Farmers' trade

26   secrets, as well as for other violations of state and federal law pertaining to the operation

27   of the parties' respective insurance companies.  Specifically, Farmers' operative Second

28   Amended Complaint ("SAC") alleges the following causes of action:  (1) breach of

                                        1

1 | contract against McCarren; (2) misappropriation of trade secrets against all Defendants;

2 | (3) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C),

3 | against Henton and Perkins; (4) violation of the CFAA, 18 U.S.C. § 1030(a)(4), against

4 | Henton and Perkins; and (5) civil conspiracy against all Defendants.  ECF No. 48.

5 |      On June 3, 2014, Defendants SIA and Steele (collectively "Cross-Claimants") filed

6 | a First Amended Cross-Claim ("FACC") against Cross-Defendants for interference with

7 | prospective business advantage.  ECF No. 72.  Presently before the Court is Cross-

8 | Defendants' (1) anti-SLAPP Motion to Strike the FACC ("anti-SLAPP Motion"), ECF

9 | No. 74, and (2) Motion to Dismiss the FACC for failure to state a claim pursuant to

10 | Federal Rule of Civil Procedure 12(b)(6), ECF No. 75.  For the reasons set forth below,

11 | the anti-SLAPP Motion, ECF No. 74, is GRANTED WITHOUT LEAVE TO AMEND and

12 | the Motion to Dismiss, ECF No. 75, is DENIED AS MOOT.[1]

14 | **BACKGROUND[2]**

16 |      Cross-Defendants are a group of five insurance exchanges, each of which sells

17 | insurance provided by Farmers.  Cross-Claimants are SIA and Steele.  Steele is a

18 | former Farmers district manager who left Farmers to start SIA, which competes with and

19 | does not offer Farmers products.  Cross-Defendants' SAC generally alleges that former

20 | Farmers agents and district managers misappropriated Farmers' trade secrets by

21 | downloading and copying Farmers' customer lists off Farmers' online "dashboard."  The

22 | lists contain customer information, including when policies were up for renewal and what

23 | types of policies customers had.  Cross-Defendants also allege that Defendants took

24 | advantage of elderly or ill Farmers agents to gain access to Farmers' customer lists.

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g); see ECF No. 87.

[2] Because the parties are familiar with the background of this case, the Court recites only a general overview of the facts which are relevant to the Court's disposition of the pending motions.  These facts are taken, at times verbatim, from the SAC and FACC.  ECF No. 72.  Additional facts may be found in the Court's previous Orders, ECF Nos. 47 and 70.

1  Cross-Defendants claim that Defendants have improperly solicited Farmers customers

2  and convinced them to switch to SIA and as a result Farmers has lost approximately two

3  hundred customers to SIA.

4       In their FACC, Cross-Claimants assert that before Cross-Defendants filed the

5  initial complaint in this lawsuit on April 23, 2013, a Farmers district manager, Audrey

6  Peguero ("Peguero"), "orally made false statements. . . to Cross-[D]efendants' insurance

7  agents that Cross-[D]efendants had filed a lawsuit against Cross-[C]laimants, falsely

8  stating that Cross-[C]laimants had misappropriated Cross-[D]efendants' confidential

9  policyholder information for the purpose of soliciting policyholders to. . .switch their

10  insurance business to Cross-[C]laimant SIA, and that Cross-[D]efendants would be

11  putting Cross-[C]laimants out of business."  ECF No. 72 ¶ 19.  According to Cross-

12  Claimants, as a result of this wrongful conduct, their relationships with customers,

13  potential customers, and various insurance carriers have been disrupted and they have

14  lost income.  See id. ¶ 21.

15

16                              **STANDARD**[3]

17

18       California's anti-SLAPP (strategic lawsuit against public participation) statute is

19  designed to discourage suits that "masquerade as ordinary lawsuits but are brought to

20  deter common citizens from exercising their political or legal rights or to punish them for

21  doing so."  Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003) (internal quotation

22  marks omitted).  The statute provides:

23            A cause of action against a person arising from any act of
              that person in furtherance of the person's right of petition or
24            free speech under the United States Constitution or the
              California Constitution in connection with a public issue shall
25            be subject to a special motion to strike, unless the court
              determines that the plaintiff has established that there is a
26            probability that the plaintiff will prevail on the claim.

27  _____

28       [3] Because the Court grants the anti-SLAPP Motion, the Rule 12(b)(6) Motion is moot.  Accordingly,
     the Rule 12(b)(6) standard is not included herein.

                                        3

1   Cal. Civ. Proc. Code § 425.16(b)(1).  The anti-SLAPP statute "was enacted to allow early

2   dismissal of meritless first amendment cases aimed at chilling expression through costly,

3   time-consuming litigation."  Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir.

4   2001).  In particular, the California legislature found:

5           [T]here has been a disturbing increase in lawsuits brought
            primarily to chill the valid exercise of the constitutional rights
6           of freedom of speech and petition for the redress of
            grievances.  The Legislature finds and declares that it is in
7           the public interest to encourage continued participation in
            matters of public significance, and that this participation
8           should not be chilled through abuse of the judicial process.

9   Cal. Civ. Proc. Code § 425.16(a).  The legislature specifically provided that the anti-

10  SLAPP statute should be "construed broadly."  Id.; see also Briggs v. Eden Council for

11  Hope & Opportunity, 19 Cal. 4th 1106, 1119-20 (1999).

12      A defendant may file an anti-SLAPP motion in federal court.  See Thomas v. Fry's

13  Elecs., Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam).  The Court must

14  evaluate the anti-SLAPP Motion in two steps.  "First, the defendant moving to strike must

15  make a threshold showing. . . that the act or acts of which the plaintiff complains were

16  taken in furtherance of the [defendant's] right of petition or free speech under the United

17  States of California Constitution in connection with a public issue, as defined in

18  [subsection (e) of] the statute."  Hilton v. Hallmark Cards, 599 F.3d 894, 903 (9th Cir.

19  2010) (internal quotation marks and citations omitted).

20      "Second, [i]f the court finds that such a showing has been made, it must then

21  determine whether the plaintiff has demonstrated a probability of prevailing on the

22  claim."  Id. (internal quotation marks and citation omitted).  "Put another way, the plaintiff

23  must demonstrate that the complaint is both legally sufficient and supported by a

24  sufficient prima facie showing of facts to sustain a favorable judgment if the evidence

25  submitted by the plaintiff is credited."  Wilson v. Parker, Covert & Chidester, 28 Cal. 4th

26  811, 821 (2002) (internal quotation marks omitted); see also Batzel, 333 F.3d at 1024.

27  "[T]hough the court does not weigh the credibility or comparative probative strength of

28  competing evidence, it should grant the [anti-SLAPP motion] if, as a matter of law, the

defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." Wilson, 28 Cal. 4th at 821 (emphasis in original); see Cal. Civ. Proc. Code § 425.16(b)(2).  Thus, the anti-SLAPP statute "subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim." Navellier v. Sletten, 29 Cal. 4th 82, 92 (2002) (citation and internal quotation marks omitted).

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." Id. at 89 (emphasis in original). "These rules apply with equal force to an anti-SLAPP motion brought by a cross-defendant, since section 425.16 'treats complaints identically with cross-complaints.'" Kurz v. Syrus Sys., LLC, 221 Cal. App. 4th 748, 758 (2013) (internal quotation marks and citations omitted).

**ANALYSIS**

In order to rule on the instant anti-SLAPP Motion, the Court must address the following issues.  First, the Court must address Cross-Claimants' contention that the commercial speech exemption, codified at section California Code of Civil Procedure section 425.17, exempts the FACC from an anti-SLAPP motion.  If the exemption does not apply, the Court must determine whether Cross-Defendants have met their burden of showing that their alleged statements were taken in furtherance of the right of free speech in connection with a public issue.  If Cross-Defendants have met their burden, the Court finally must determine whether Cross-Claimants have met their burden of showing the FACC is legally sufficient and supported by a prima facie showing of facts.

**A. Commercial Speech Exemption**

Cross-Claimants contend that the commercial speech exemption, codified at California Code of Civil Procedure section 425.17(c), exempts their claim from an anti-

1    SLAPP motion.  This statutory exemption to the anti-SLAPP provision was enacted by

2    the Legislature in 2003 to curb a "disturbing abuse" of the anti-SLAPP statute.  Cal. Civ.

3    Proc. Code § 425.17(a).  Under section 425.17(c), causes of action arising from

4    commercial speech are exempt from the anti-SLAPP law when:

> 1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
>
> 2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;
>
> 3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
>
> 4) the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

15   Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC, 814 F. Supp.

16   2d 1033, 1037 (S.D. Cal. 2011) (citing Simpson Strong-Tie Co. v. Gore, 49 Cal. 4th 12,

17   30 (2010)).

18          Here, the first two requirements are met.  Both Cross-Claimants and Cross-

19   Defendants are primarily engaged in the business of selling goods and services,[4] and

20   the statements at issue consist of representations of fact about Cross-Claimants'

21   business operations.  However, the third and fourth requirements are not satisfied.

22          As to the third requirement, the Court finds that Peguero's alleged statements

23   were not made "for the purpose of obtaining approval for, promoting, or securing . . .

24   commercial transactions" in Cross-Defendants' services, or "in the course of delivering"

25   Cross-Defendants' services.  Id.  Rather, the statements were made by a Farmers

26   district manager to Farmers agents; there are no specific facts pled to support a

27   _____

28   [4] Insurance is explicitly included as a good or service under the statute.  Cal. Civ. Proc. Code § 425.17(c)

1    conclusion that the Farmers agents disclosed the information allegedly communicated

2    by Peguero to obtain business for Farmers.

3         As to the fourth requirement, the Court finds the direct intended audience of

4    Peguero's communications was Farmers agents.  Moreover, based on the facts as pled,

5    the Court cannot find that the Farmers agents were "likely to repeat the statement to, or

6    otherwise influence, an actual or potential buyer or customer."  Id. (emphasis added).

7    Much more likely is that Peguero's alleged communications were intended to remind the

8    agents of their continuing duty to Farmers and the potential repercussions of violating

9    that duty.

10        Accordingly, Cross-Claimants have not met their burden of demonstrating that the

11   commercial speech exemption applies and the Court must continue the anti-SLAPP

12   analysis.

13        **B.  Cross-Defendants' Burden**

14        Next, the Court must determine whether Cross-Defendants have met their burden

15   of showing that the act of which Cross-Claimants complain was taken in furtherance of

16   Cross-Defendants' right of free speech in connection with a public issue.  To meet this

17   burden, Cross-Defendants' conduct[5] must have been conducted "in furtherance" of the

18   exercise of free speech rights.  Hilton, 599 F.3d at 903.  "By its terms, this language

19   includes not merely actual exercises of free speech rights but also conduct that furthers

20   such rights."  Id. (citing Cal. Civ. Proc. Code § 425.16(e)(4)).  As used in the anti-SLAPP

21   statute, an

22              "act in furtherance of a person's right of petition or free
             speech under the United States or California Constitution in
23              connection with a public issue" includes:  (1) any written or
             oral statement or writing made before a legislative, executive,
24              or judicial proceeding, or any other official proceeding
             authorized by law, (2) any written or oral statement or writing
25              made in connection with an issue under consideration or

26        _____

            [5] Cross-Defendants note that district manager Audrey Peguero, who allegedly made the
27   statements complained of in the FACC, is an independent contractor and thus it is unclear whether her
     statements could be attributable to Cross-Defendants.  See ECF No. 74 at 5; ECF No. 85 at 2.  The Court
28   assumes without deciding that Cross-Defendants could be held accountable for Peguero's alleged
     statements.

> review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

"A claim for relief filed in federal district court indisputably is a 'statement or writing made before a . . . judicial proceeding.'" Navellier, 29 Cal. 4th at 90 (quoting Cal. Civ. Proc. Code § 425.16(e)(1)). Moreover, California courts have taken a "fairly expansive view of what constitutes litigation-related activities," Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1263 (2008), and communications in connection with anticipated litigation are considered to be under consideration or review by a judicial body in connection with the anti-SLAPP statute, see id. at 1268.

Here, the gravamen of the FACC is that a few weeks prior to the filing of a complaint in this case, a Farmers district manager stated to Farmers agents that Farmers had filed a lawsuit against Cross-Claimants due to misappropriation of Farmers' confidential policyholder information and solicitation of Farmers' customers. See ECF No. 72 ¶ 19. The Court finds that Peguero's alleged statements to Farmers agents about a lawsuit based on misappropriation of trade secrets were made in connection with anticipated litigation and were therefore connected with an issue under consideration or review by a judicial body. Thus, the Court must determine whether Cross-Claimants have met their burden of showing the FACC is legally sufficient and supported by a prima facie showing of facts

### C. Cross-Claimants' Burden

"[T]he [anti-SLAPP] statute does not bar a plaintiff from litigating an action that arises out of the defendant's free speech or petitioning; it subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim." Hilton, 599 F.3d at 908 (quoting Navellier, 29 Cal. 4th at 93). Accordingly,

1    "[o]nce it is determined that an act in furtherance of protected expression is being

2    challenged, the plaintiff must show a 'reasonable probability' of prevailing in its claims for

3    those claims to survive dismissal." Metabolife Int'l, 264 F.3d at 840 (citing § 425.16(b)).

4    "To do this, the plaintiff must demonstrate that the complaint is legally sufficient and

5    supported by a prima facie showing of facts to sustain a favorable judgment if the

6    evidence submitted by the plaintiff is credited." Id. (internal citation and quotation marks

7    omitted).  "Thus, a defendant's anti-SLAPP motion should be granted when a plaintiff

8    presents an insufficient legal basis for the claims or when no evidence of sufficient

9    substantiality exists to support a judgment for the plaintiff." Metabolife Int'l, 264 F.3d at

10   840 (citation and internal quotation marks omitted).  "At this second step of the anti-

11   SLAPP inquiry, the required probability that [Cross-Claimants] will prevail need not be

12   high." Hilton, 599 F.3d at 908.

13          Cross-Defendants contend that the FACC is defeated by California's litigation

14   privilege, codified at California Civil Code section 47(b), and thus Cross-Claimants

15   cannot show that the claim has even minimal merit.  "For well over a century,

16   communications with 'some relation' to judicial proceedings have been absolutely

17   immune from tort liability by the privilege codified as section 47(b)." Rubin v. Green,

18   4 Cal. 4th 1187, 1193 (1993).  "The usual formulation is that the privilege applies to any

19   communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

20   participants authorized by law; (3) to achieve the objects of the litigation; and (4) that

21   have some connection or logical relation to the action." Mindys Cosmetics, Inc. v. Dakar,

22   611 F.3d 590, 599 (9th Cir. 2010) (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212

23   (1990)).  "The principal purpose of section 47(2) is to afford litigants and witnesses the

24   utmost freedom of access to the courts without fear of being harassed subsequently by

25   derivative tort actions." Silberg, 50 Cal. 3d at 213 (internal citation omitted).

26   Communications made preparatory to or in anticipation of the bringing of action fall

27   within the absolute litigation privilege, which is historically extremely broad. See Dove

28   Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal. App. 4th 777, 784 (1996).  Indeed, "it

1  is late in the day to contend that communications with 'some relation' to an <u>anticipated</u>

2  lawsuit are not within the privilege."   <u>Rubin</u>, 4 Cal. 4th at 1194-95 (emphasis in original).

3         "Because the litigation privilege protects only publications and communications, a

4  'threshold issue in determining the applicability' of the privilege is whether the

5  defendant's conduct was communicative or noncommunicative."   <u>Lopez Reyes v.</u>

6  <u>Kenosian & Miele, LLP</u>, 525 F. Supp. 2d 1158, 1162 (N.D. Cal. 2007) (quoting

7  <u>Jacob B. v. County of Shasta</u>, 40 Cal. 4th 948, 957 (2007)).   "The distinction between

8  communicative and noncommunicative conduct hinges on the gravamen of the action."

9  <u>Id.</u> (citing <u>Rubin</u>, 4 Cal. 4th at 1195; <u>Pac. Gas & Elec. Co. v. Bear Stearns & Co.</u>, 50 Cal.

10  3d 1118, 1132 n.12 (1990)).   "[I]f the gravamen of the action is communicative, the

11  litigation privilege extends to noncommunicative acts that are necessarily related to the

12  communicative conduct . . . .   Stated another way, unless it is demonstrated that an

13  independent, noncommunicative, wrongful act was the gravamen of the action, the

14  litigation privilege applies."   <u>Id.</u> (quoting <u>Jacob B.</u>, 40 Cal. 4th at 957).

15         Here, the gravamen of the FACC is based on alleged statements by a Farmers

16  district manager.   Thus, the conduct is communicative and the only remaining question

17  is whether the complained-of statements were made "in relation to judicial proceedings."

18  The Court finds that Peguero's statements fall within the historically broad absolute

19  litigation privilege as it applies to communications made in anticipation of bringing an

20  action.

21         <u>Dove Audio</u> is instructive.   In that case, Dove published a recording and agreed to

22  pay a two percent royalty for the participation of certain celebrities, to be divided equally

23  among the celebrities' designated charities.   <u>Dove Audio</u>, 47 Cal. App. 4th at 779-80.

24  One of the celebrities' children realized that only minimal royalty payments had been

25  received and asked a law firm to look into the situation, obtain the support of other

26  celebrities who participated in the recording, and contact a governmental agency to

27  request an investigation.   <u>Id.</u> at 780.   The law firm sent a letter to the other celebrities

28  stating that "little if any money went to the charities" and that the firm "<u>intend[ed]</u> to file a

1    complaint with the State Attorney General's Office." Id. (emphasis added).  Dove filed an

2    action seeking damages for libel and for interference with economic advantage, alleging

3    that the letter implied that Dove kept royalties rather than pay them to the celebrities'

4    charities and resulted in other celebrities refusing to work with Dove.  The court

5    disagreed, holding that the communication was protected by the absolute litigation

6    privilege, even where the letter was only in preparation for sending a complaint to the

7    California Attorney General, who does not have the power to hold hearings, decide

8    issues, or affect the personal or property rights of private persons.  Id.

9        As in the Dove Audio case, Cross-Defendants' communications through Peguero

10   were made in anticipation of bringing an action.  And in other ways, Cross-Defendants'

11   actions fall more squarely within the litigation privilege than the actions taken in Dove

12   Audio.  For instance, in this case Cross-Defendants planned to file a lawsuit, which falls

13   squarely within the absolute litigation privilege, while in Dove Audio the communication

14   at issue was only in preparation for sending a complaint to a state executive officer who

15   could not even hold a hearing on the issue.  In addition, Peguero's statements here were

16   made only to Farmers agents, while in Dove Audio the letter's intended audience was to

17   the defendant's alleged victims.

18       Accordingly, the Court finds that the section 47 litigation privilege applies to

19   Cross-Defendants' communications and there is no probability that Cross-Claimants

20   would prevail on their claim for interference with a prospective business advantage.

21   Thus, the Court grants the anti-SLAPP Motion.[6]

22       **D. Leave to Amend**

23       The FACC was Cross-Claimants' second attempt to survive an anti-SLAPP

24   motion.  Although the Court granted the first such motion, leave to amend was granted

25   based on the Ninth Circuit's directive that "granting a defendant's anti-SLAPP motion to

26   strike a plaintiff's initial complaint without granting the plaintiff leave to amend would

27   _____

28       [6] Aside from the application of the litigation privilege, the fact that the Court granted Farmers a
     preliminary injunction undercuts Cross-Claimants' claim on the merits.

1    directly collide with Federal Rule of Civil Procedure 15(a)'s policy favoring liberal

2    amendment." Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir.

3    2004).  Based on the facts alleged in the FACC and the Court's findings with regard to

4    the application of the commercial speech exemption and the anti-SLAPP statute,

5    however, the Court finds that further leave to amend would be futile.  Accordingly, Cross-

6    Defendants' anti-SLAPP Motion is GRANTED WITHOUT LEAVE TO AMEND.

7         **E.  Attorneys' Fees**

8         Cross-Defendants request attorneys' fees and costs incurred in bringing the anti-

9    SLAPP Motion.  ECF No. 74 at 8; ECF No. 6.  As stated above, California's anti-SLAPP

10   statute provides a mechanism for a defendant (or cross-defendant) to strike civil actions

11   or claims brought primarily to chill the exercise of free speech.  Cal. Civ. Proc. Code

12   § 425.16(c).  To deter such chilling, "a prevailing defendant on a special motion to strike

13   shall be entitled to recover his or her attorney's fees and costs."  Id. § 425.16(c).

14   Accordingly, the Court grants Cross-Defendants' request.

15        Thus far, however, Cross-Defendants have provided inconsistent estimates of

16   attorneys' fees and costs.  In the anti-SLAPP Motion, Cross-Defendants requested

17   $2,552.00.  ECF No. 74 at 8.  However, counsel's accompanying declaration identifies

18   the applicable fees and costs "in excess of $1,856."  ECF No. 74, Decl. of Michael A.S.

19   Newman.  Moreover, Cross-Defendants' request appears to include fees expected to

20   arise from appearing for a hearing with respect to the instant motion, which did not

21   occur.  Id.  Accordingly, consistent with the time limits indicated below, Cross-

22   Defendants shall submit documentation in support of the hours actually worked and the

23   rates requested for all attorneys' fees and costs sought.

24   ///

25   ///

26   ///

27   ///

28   ///

1

2

**CONCLUSION**

3    For the reasons set forth above, Cross-Defendants' anti-SLAPP Motion to Strike,

4    ECF No. 74, is GRANTED WITHOUT LEAVE TO AMEND.  Cross-Defendants' request

5    for attorneys' fees is GRANTED.  As soon as practicable and not later than twenty (20)

6    days after the date this Memorandum and Order is filed electronically, Cross-Defendants

7    shall submit documentation in support of the hours actually worked and the rates

8    requested for all requested attorneys' fees and costs.  Cross-Defendants' Motion to

9    Dismiss, ECF No. 75, is DENIED AS MOOT.

10    IT IS SO ORDERED.

11   Dated:  December 11, 2014

12

13

14   MORRISON C. ENGLAND, JR., CHIEF JUDGE

15   UNITED STATES DISTRICT COURT

16

17

18

19

20

21

22

23

24

25

26

27

28